Breitel, J.
Defendant appeals from his conviction for unlawful possession of a narcotic drug (Public Health Law, § 3305) after a plea of guilty. He contends that his motion to suppress under section 813-c of the Code of Criminal Procedure was improperly denied after a hearing.
Defendant’s sole contention is that there was no probable cause to make the arrest and, therefore, the search following the arrest was illegal (Code Crim. Pro., § 177; e.g., People v. Loria, 10 N Y 2d 368, 373).
The only witness at the suppression hearing was Detective Odesto, the arresting officer. He testified that at 11:45 p.m., on March 13, 1967, in the vicinity of 126th Street and Eighth Avenue in Manhattan, “ an area where any narcotics can easily be had ’ ’, he had observed the conduct of the defendant and an unidentified party: “ I observed the defendant, Mr. Brown, in the company of a person whom I suspected of being a narcotics addict. There came a time when that person that was with Mr. Brown walked away from him and entered a building at 126th Street and came out shortly thereafter and rejoined Mr. Brown. I observed Mr. Brown and that other person come close together. I observed what appeared to be as a movement of hand. At that time I started to go across the street and intercepted the two persons when Mr. Brown walked in my direction [with “ a fast shuffling gait ”] and the other *423 person walked in the opposite direction. I met Mr. Brown in the middle of the intersection and confronted him and told him I was a police officer. ’ ’
Detective Odesto described the procedures followed generally during illicit sales of ^narcotic drugs: “ That particular area at 126th Street and 8th Avenue, most of its persons engaged in the selling of narcotics do not carry narcotics on them. They usually have a place where it is stored in or carried by someone else. This is why I did not intercept that second person in the initial moving away of the defendant. On the second approach of this person, by the time I was able to position myself where I could possibly apprehend him, it was too late. Already he had walked away. In other words, what I’m saying is that usually the person would have a conversation with the potential seller, give him his money and order whatever it is, and then that second person, or the potential seller, will go to his place where he stores the narcotics and bring it back, give it to that person, and they’ll go in opposite directions.” Although Detective Odesto did not so testify, it may be inferred that the arrest was made because he believed that the acts of the defendant indicated that a sale of narcotics was occurring.
The observed activity on which the arrest was based is limited: a high crime area, a suspected narcotic addict, a meeting, parting, return, and movement of hands.
Although the observed acts of the defendant and the suspected narcotic addict were not inconsistent with a culpable narcotics transaction, they were also susceptible of many innocent interpretations, even between persons with a narcotics background. The behavior, at most “ equivocal and suspicious ”, was not supplemented by any additional behavior raising “ the level of inference from suspicion to probable cause” (see People v. Corrado, 22 N Y 2d 308, 311, 313). Thus, for example only, there was no recurring pattern of conduct sufficient to negate inferences of innocent activity (cf. People v. Smith, 21 N Y 2d 698; People v. Valentine, 17 N Y 2d 128, 132), no overheard conversation between the suspects that might clarify the acts observed (cf. People v. Cohen, 23 N Y 2d 674), no flight at the approach of the officer (cf. People v. White, 16 N Y 2d 270), and no misstatements when questioned about observed activity (People v. Brady, 16 N Y 2d 186).
*424 The logical and practical problem is that even accepting ungrudgingly, as one should, the police officer’s expertness in detecting a pattern of conduct characteristic of a particular criminal activity, the detected pattern, being only the superficial part of a sequence, does not provide probable cause for arrest if the same sketchy pattern occurs just as frequently or even more frequently in innocent transactions. The point is that the pattern is equivocal and is neither uniquely nor generally associated with criminal conduct, and unless it is there is no probable cause. Thus, for example, the observation of a known or obvious prostitute talking to a man she meets (or accosts) on the street does not establish probable cause. More of a pattern must be shown, either by proof of the conversation or ensuing culpable conduct.
Nor does it suffice to reason from the results of other searches, conducted under similar circumstances, to establish probable cause. There will be too many times in which the search made in the same circumstances yields no contraband and the transaction ends up in a nonarrest which, of course, is not recorded.
It would be dangerous, indeed, to find probable cause for arrest in every two-phased meeting of a narcotic addict and another, ending in a vaguely described “ movement of hands ”.
Accordingly, the judgment of conviction should be reversed and the information dismissed.