Commonwealth *v.* Vassiljev, Appellant.

216

Argued December 9, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*John W. Packel*, Assistant Defender, with him *Vincent J. Ziccardi*, Defender, for appellant.

*James D. Crawford,* Deputy District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., March 23, 1971:

Appellant was convicted of possession of a narcotic drug after trial before Judge CHALFIN without a jury. Motions for a new trial and in arrest of judgment were refused and appellant sentenced. He appeals on the ground that the narcotics were unlawfully seized and should not have been admitted into evidence.

Prior to trial, a suppression hearing was held before Judge REIMEL who refused to suppress the narcotics. The only witness as to the manner in which the evidence was obtained was a police officer. The appellant did not testify at the suppression hearing or at the trial. The police officer testified at both the suppression hearing and the trial. His testimony differed in certain details between the hearing and the trial as to the manner of obtaining the narcotics; however, the following facts can be supported by his testimony on both occasions.

Two police officers saw appellant and a negro male pass something between them in the 1100 block of Wallace Street on January 2, 1970, at 11:15 p.m. As the officers approached in their patrol car, both men ran. They stopped the appellant promptly, put him in their patrol car, and took him to the police station. The narcotics were obtained by the police after arrival at the police station. When the police first saw the two men they thought a "strong arm robbery" was in progress and that appellant was the victim. The police officer gave several different reasons for picking up appellant: He said that he picked him up for investiga-

tion, that he brought him in because of many complaints of illegal narcotics traffic in that area, and that he took him in because he told the officer he was trying to find Conshohocken.

At the suppression hearing, the police officer testified that while appellant was at the police station "a bundle of white powder fell on to the floor." At the trial, the same police officer testified that the appellant was searched at the police station and the narcotics found in his left shoe. At the trial, appellant renewed his objection to the admissibility of the evidence but was, of course, bound by the provisions of Pa. R. Crim. P. No. 323(j) to the effect that the determination at the hearing was binding at trial.

Appellant is now entitled to appellate evaluation of the admissibility of the evidence. *Commonwealth v. Bosurgi,* 411 Pa. 56, 64, 190 A. 2d 304, 309 (1963); *Commonwealth v. Washington,* 428 Pa. 131, 132, 236 A. 2d 772, 774 (1968). Although the judge at trial under the mandate of Pa. R. Crim. P. No. 323(j) on the question of admissibility could not consider any evidence unless it was unavailable at the suppression hearing, we are not similarly bound on appeal. On appeal from judgment of sentence, we review the entire record both of the suppression hearing and of the trial. Upon consideration of the police officer's testimony at trial, we are satisfied that the narcotics were obtained after a search of the appellant at the station house.

We need not pass on whether the police acted properly in taking the appellant in for investigation because, even if they acted properly, a complete search of his person was unreasonable. The constitutional limits of a reasonable search were set forth in *Commonwealth v. Hicks,* 434 Pa. 153, 158, 253 A. 2d 276, 279 (1969) : "First, a seizure and search, such as here involved, is reasonable and legitimate if the police officer has probable cause to arrest, i.e., if at the incep-

tion of the seizure he has knowledge of sufficient facts and circumstances, gained through trustworthy information, to warrant a prudent man in the belief that the person seized has committed, is committing, or is about to commit a crime. Second, even if probable cause to arrest is absent, the police officer may still legitimately seize a person, . . . and conduct a limited search of the individual's outer clothing in an attempt to discover the presence of weapons which might be used to endanger the safety of the police officers and others, *if* the police officer observes unusual and suspicious conduct on the part of the individual seized which leads him reasonably to conclude that criminal activity may be afoot and that the person with whom he is dealing may be armed and dangerous."

It is obvious that the search in the present case cannot be justified as a weapons search. No attempt was made to search appellant when he was apprehended on the street; thus, at this point the officers did not feel that their safety was endangered. Further, the officer's testimony showed no later conduct on the part of appellant which could lead to a conclusion that he was "armed and dangerous." Finally, even if a weapons search would have been permissible, the search in this case goes far beyond the limited search of an individual's outer clothing permitted by *Hicks*. See, *Terry v. Ohio*, 392 U.S. 1 (1968).

Since we have ruled out a protective weapons search, and since the police had no warrant to arrest or search the appellant, the present search can be held valid only if it was incidental to a lawful arrest. *Commonwealth v. Hicks*, supra. A police officer may make a lawful arrest without a warrant where he has reasonable or probable cause to believe that a felony has been committed and that the person to be arrested is the one who committed the felony. *Commonwealth v. Bosurgi*, supra. He may also arrest without a warrant where

he has probable cause to believe that a misdemeanor is being committed in his presence. *Commonwealth v. Garrick,* 210 Pa. Superior Ct. 124, 232 A. 2d 8 (1967).

Appellant was arrested and charged with unlawful possession of narcotics, a felony, and unlawful use of narcotics, a misdemeanor. In our opinion the appellant was under arrest from the time he was placed in the police car. As was said in *Commonwealth v. Bosurgi,* supra at p. 68, "An arrest may be accomplished by 'any act that indicates an intention to take [a person] into custody and that subjects him to the actual control and will of the person making the arrest'. . . ." When appellant was placed in the police car he was completely under the control of the officers. At that time the officers had no probable cause to arrest him. All they saw was something being passed from one man to another. They did not know what was passed. If they had any probable cause to believe that an armed robbery was taking place, the officer's statement that he thought appellant was the victim clearly shows that he did not think appellant had committed it. They had no probable cause to believe that any other felony had been committed nor did they have any probable cause to believe that a misdemeanor was being committed in their presence.

The Commonwealth argues, based on the officer's testimony at the trial, that the appellant was arrested for illegal use and possession of narcotics at the station house when the officer observed puncture marks on his arms. However, puncture marks on the arm alone would not give probable cause to believe that appellant had narcotics on his person nor would they justify a belief that he was at that time using narcotics. In *Commonwealth v. Garrick,* supra, defendant's narcotic state, dilated pupils and trance-like actions, justified a belief that defendant was at that time using narcotics; those factors are absent here.

The narcotics were the product of an unconstitutional search and may not be admitted in evidence against the appellant.

Judgment reversed and a new trial granted.

WRIGHT, P. J., would affirm on the opinion of the court below.