## Commonwealth *v.* Norwood, Appellant.

Argued April 23, 1973. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*John W. Packel,* Assistant Defender, with him *Anne F. Johnson, Andrea Levin,* and *Jonathan Miller,* Assistant Defenders, and *Vincent J. Ziccardi,* Defender, for appellant.

*Louis A. Perez, Jr.,* Assistant District Attorney, with him *James T. Ranney* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, May 23, 1974:

Appellant Wayne Norwood was convicted of possession of narcotic drugs and sentenced to one year probation. The Superior Court affirmed, *per curiam, Commonwealth v. Norwood,* 221 Pa. Superior Ct. 714, 288 A. 2d 826 (1972), and we granted allocatur.

The sole issue presented by this appeal is whether the lower court erred in denying appellant's pretrial motion to suppress evidence, and in permitting such

evidence to be introduced at trial. Appellant claims that the evidence was obtained as the result of a search incident to an unconstitutional arrest, thereby violating his Fourth and Fourteenth Amendment rights.

The evidence at the suppression hearing consisted solely of testimony by Officer Carl Jackson, the arresting officer. Officer Jackson stated that, at about 1:30 p.m. on December 10, 1970, he was informed that one Bo Baines would be selling drugs in the 200 block of S. 60th Street, Philadelphia. The informant had given him information on "about three" prior occasions leading to two arrests. Officer Jackson and his partner went to the location in question and observed "five to six Negro males, known to me as users of drugs" from a distance of twenty-five feet. At about 2:00 p.m., they saw Baines walking north on 60th Street toward the group. One of them, the appellant, approached Baines and passed what appeared to be currency to him. Baines moved his hand, which had been cupped, toward the appellant, and the appellant thrust his hand into his pocket.

From these facts, Officer Jackson concluded that a drug transaction had taken place. He approached the appellant, identified himself, and asked the appellant to remove whatever he had put in his pocket. Appellant handed the officer one glazed packet of a white powder later identified as heroin.

In reviewing a warrantless arrest, we must determine whether the facts and circumstances within the knowledge of the officer at the time, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is commiting a crime. *Commonwealth v. Garvin,* 448 Pa. 258, 262, 293 A. 2d 33 (1972) ; *Commonwealth v. Bishop,* 425 Pa. 175, 181, 228 A. 2d 661, 664-65 (1967). "The standards applicable to . . . the officer's probable-cause assessment

at the time of the challenged arrest and search are at least as stringent as the standards applied with respect to the magistrate's assessment." *Whiteley v. Warden,* 401 U.S. 560, 566 (1971). See also, *Betrand Appeal,* 451 Pa. 381, 303 A. 2d 486 (1973); *Commonwealth v. Garvin, supra.*

Appellant primarily challenges the sufficiency of the informant's tip to the effect that Baines would be selling drugs. We need not decide whether this tip, standing alone, would meet the requirements of *Spinelli v. United States,* 393 U.S. 410 (1969) and *Aguilar v. Texas,* 378 U.S. 108 (1964), because the arresting officer in this case gained additional crucial information from his personal observations prior to the arrest of appellant.[1]

The officer saw a group of men whom he had previously encountered in connection with drug violations. He saw a man whom he personally knew to be a drug pusher approach the group. The appellant then engaged in a surreptitious exchange with that pusher, and the pusher fled at the approach of the police. This information strongly reinforces the tip to the effect that the pusher would be in a given place at a given time selling drugs. See *Draper v. United States,* 358 U.S. 307 (1959); *Commonwealth v. Frisby,* 451 Pa. 16, 19, 301 A. 2d 610 (1973). "Probable cause does not emanate from an antiseptic courtroom, a sterile library or a sacrosanct adytum, nor is it a pristine 'philosophical concept existing in a vacuum', but rather it requires a pragmatic analysis of 'everyday life on which reasonable and prudent men, not legal techni-

---

[1] In view of this conclusion, we need not decide whether the suppression judge violated the holding of *Commonwealth v. Hall,* 451 Pa. 201, 302 A.2d 342 (1973) when he curtailed cross-examination concerning the names of those arrested as a result of the informant's prior tips. The legality of the arrest is not dependent upon the prior reliability of the informant under these facts.

cians, act.' It is viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training. It is 'a plastic concept whose existence depends on the facts and circumstances of the particular case.' Because of the kaleidoscopic myriad that goes into the probable cause mix 'seldom does a decision in one case handily dispose of the next.' It is however the totality of these facts and circumstances which is the relevant consideration. Viewed singly these factors may not be dispositive, yet when viewed in unison the puzzle may fit." [Citation omitted.] *United States v. Davis,* 458 F. 2d 819, 821 (1972). In our view, Officer Jackson had probable cause to believe that a drug sale had occurred. Therefore, the arrest and search incident thereto were legal.

The judgment of sentence is affirmed.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I must dissent because there clearly was no probable cause to arrest the appellant. The prosecution relies on (1) an informer's tip and (2) the arresting officer's personal observations. Clearly, neither of these factors in this case, considered together or separately, were sufficient to establish probable cause. An informer's tip must meet a two-prong test. The facts must support (1) an inference that the informer was generally trustworthy and (2) an inference that the informer obtained the information in a reliable way, *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964).

In this case, the record is *absolutely silent* as to the second prong. There is *nothing* to indicate in what way the informer received his information. In *Common-*

*wealth v. Smith,* 453 Pa. 326, 309 A. 2d 413 (1973), the informer told the police that while he was drinking in a bar with two Negro males, he "found out" that they had narcotics in their possession. The police went to the bar and in spite of the fact that the informer's tip was confirmed, we reversed because the informer's tip was clearly defective since there were no facts disclosing how the informer obtained his information. The *Aguilar-Spinelli* test required that the tip in *Smith* be ignored in determining probable cause. The informer's tip in this case is defective for the same reason and must likewise be ignored. It does not meet the second prong of the *Aguilar-Spinelli* test.

Moreover, the informer's tip in this case must be disregarded because it also fails to meet the other half of the *Aguilar-Spinelli* test. There must be facts to establish that *the informer was reliable.* Such facts do not exist in this case. The facts relied on to establish the informer's reliability came from the arresting officer's testimony. He first said that he had been given information approximately three times from the same informer and the information received had led to two or three arrests. Later, the officer testified that he had received information *once or twice* which had led to arrests but admitted that as yet no indictments or convictions had resulted. Such facts are totally insufficient to establish the trustworthiness of the informer. The only fact that the officer was certain about was *one arrest* which had not yet resulted in indictment or conviction. Trustworthiness of an informer cannot be established on such minimal facts about an unidentified informer.

There is an additional problem in this appeal concerning the informer's trustworthiness. Faced with such minimal facts from the arresting officer, defense counsel attempted to cross-examine the officer about the names of those arrested, but was not allowed to

do so. This ruling was directly in violation of our decision in *Commonwealth v. Hall,* 451 Pa. 201, 302 A. 2d 342 (1973).

The informer's tip in this case must be totally disregarded. It does not meet either of the two prongs of the test required by *Aguilar* and *Spinelli.* Furthermore, defense counsel was improperly curtailed in the cross-examination of the arresting officer.

The majority cites *Draper v. United States,* 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329 (1959), as holding that a tip from an unreliable informer may, nonetheless, be corroborated by police observation. This is a gross distortion of *Draper.* In *Draper,* the informer was an employee of the police, identified by name, and his reliability was clearly established. The only question in *Draper* was whether the information was obtained in a reliable way. The identified informer gave very detailed information to the police about the defendant. Such detailed information, when *corroborated down to the last minute detail by police observation,* allowed an inference that the reliable informer had obtained his information in a reliable way. We have no such detailed facts in this case. In *Spinelli,* the Court specifically rejected an attempt to interpret *Draper* as holding that the *corroboration of any tip* is sufficient to establish that the tip was reliable. *Draper* is not germane to this case.

There remains the question of whether the facts and circumstances observed by the police were sufficient to establish probable cause. They clearly were not. The arresting officer testified that from a distance of thirty feet, he observed five or six Negro males, some of them were known to him as narcotics users, standing in a group on the corner. He could not give the names of any of the narcotics users. He then saw one Bo Baines, an individual known to him as a narcotics dealer, walking towards the group. Appellant, who was unknown

to the officer, approached Baines. There was conversation between the two men. The appellant then handed what appeared to be currency to Baines, but the officer was not certain that it was, in fact, money. Baines appeared to hand something to the appellant, but since Baines' hand was cupped, the police did not see what, if anything, passed to the appellant. The officers then ran across the street. All of the men fled at the officer's approach except the appellant. He remained on the corner. When asked what was in his pocket by the arresting officer, appellant replied, "nothing." He was then asked to remove what he had placed in his pocket. The appellant took out one glazed packet containing narcotics.

This type of street transaction may appear suspicious, but it does not establish probable cause. In *Commonwealth v. Santiago*, 220 Pa. Superior Ct. 111, 283 A. 2d 709 (1971), the arresting officer observed the defendant walking and carrying two small packets, one shiny and one dull. The officer knew that the defendant had previously been arrested for narcotics offenses. When the officer called the defendant to the police car, the defendant immediately turned and ran. There was no probable cause for arrest. In *Commonwealth v. Vassiljev*, 218 Pa. Superior Ct. 215, 275 A. 2d 852 (1971), police officers saw the defendant and a Negro male pass something between them in the night street transaction. The Superior Court reversed the conviction and made the following observation: "All they saw was something being passed from one man to another. They did not know what was passed." *Id.* at 220, 275 A. 2d at 854.

In this case, officers were making their observations from a distance of thirty feet. They saw what appeared to be money passing, but they were not certain. The officers did not observe the transfer of any particular item. Moreover, appellant did not flee when the police

officers ran across the street. He was the only one who did not.

In *Cunha v. Superior Court of Alameda County,* 85 Cal. Rptr. 160, 466 P. 2d 704 (1970), the police observed the defendant and a companion looking around as they were walking on a public sidewalk in broad daylight. They appeared to engage in some sort of transaction in an area known for frequent narcotics traffic. One officer testified that the defendant's companion appeared to extract an object, although he could not actually see the object, while the defendant took out what appeared to be money. Then the two men placed their hands together in an apparent exchange. The California Supreme Court, holding that there was clearly no probable cause to arrest, said: ". . . an area known to be the site of frequent narcotics traffic should not be deemed to convert circumstances as innocent as an apparent transaction by pedestrians who seem generally concerned with their surroundings into sufficient cause to arrest those pedestrians. Transactions conducted by pedestrians are not per se illegal. . . . To uphold an arrest based upon these activities because the officers believed they were in an area of frequent narcotics traffic would abridge, if not abrogate, the Fourth Amendment's protection against police intrusions conducted without substantial justification, and might well exacerbate community resentment of harassment." *Id.* at 164, 466 P. 2d at 708.

The California Supreme Court reaffirmed the *Cunha* reasoning in *Remers v. Superior Court of Alameda County,* 87 Cal. Rptr. 202, 470 P. 2d 11 (1970). In that case the police observed the defendant standing outside a restaurant in an area of heavy narcotics traffic conversing with a hippie-looking individual. The policeman had been told by another officer that the defendant was selling drugs. He observed the defendant remove a tinfoil package from her purse at which time

she indicated to her companion that they should enter the restaurant. Thereupon the officer stopped her and removed a packet containing dangerous drugs from her purse. The Court reiterated that observation of conduct of this ambiguous nature cannot supply probable cause to arrest.

Similarly, in *People v. Brown,* 301 N.Y.S. 2d 18, 24 N.Y. 2d 421, 248 N.E. 2d 867 (1969), the New York Court of Appeals found that no probable cause to arrest existed where a detective observed the defendant in the company of a person whom he suspected of narcotics addiction in an area "where any narcotic can easily be had" at 11:45 p.m. The detective saw the suspected addict walk away from the defendant, enter a building and come out shortly thereafter to rejoin the defendant. He subsequently observed the defendant and the suspected addict come closer together at which time he saw what appeared to be a movement of the hand. Explaining its result, the Court characterized such behavior in the following manner: "Although the observed acts of the defendant and the suspected narcotics addict were not inconsistent with a culpable narcotics transaction, they were also susceptible of many innocent interpretations, even between persons with a narcotics background. The behavior, at most 'equivocal and suspicious', was not supplemented by any additional behavior raising 'the level of inference from suspicion to probable cause.'" *Id.* at 20, 24 N.Y. 2d at 423, 248 N.E. 2d at 868.

The Court further reasoned: "The logical and practical problem is that even accepting ungrudgingly, as one should, the police officer's expertness in detecting a pattern of conduct characteristic of a particular criminal activity, the detected pattern, being only the superficial part of a sequence, does not provide probable cause for arrest if the same sketchy pattern occurs just as frequently or even more frequently in innocent trans-

actions. The point is that *the pattern is equivocal and is neither uniquely or generally associated with criminal conduct, and unless it is, there is no probable cause. Thus, for example, the observation of a known or obvious prostitute talking to a man she meets (or accosts) on the street does not establish probable cause. More of a pattern must be shown, either by proof of the conversation or ensuing culpable conduct.*

"Nor does it suffice to reason from the results of other searches, conducted under similar circumstances, to establish probable cause. There will be too many times in which the search made in the same circumstances yields no contraband and the transaction ends up in a nonarrest which, of course, is not recorded.

"It would be dangerous, indeed, to find probable cause for arrest in every two-phased meeting of a narcotics addict and another ending in a vaguely described 'movement of hands' " *Id.* at 20-21, 24 N.Y. 2d at 424, 248 N.E. 2d at 868-69 (emphasis added).

In *Gray v. United States,* D.C. App., 292 A. 2d 153 (1972), the Court held that similar facts were insufficient to justify a frisk for weapons under the rationale of *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). There a police officer observed the defendant "pass money" to another person on a city street which he considered to be in a "high narcotics area." The officer testified that this conduct led him to believe that a narcotics transaction was in progress. The Court emphatically rejected the contention that this belief was reasonable on the basis of "the mere passing of money on a street."

In this case, the officer had no basis to demand that the appellant produce what was in his pocket. *Cf. Commonwealth v. Brayboy,* 431 Pa. 365, 246 A. 2d 675 (1968) (defendant, in response to an officer's demand, took a plastic bag from under his shirt). The arrest of appellant was illegal and the fruits of that arrest

should have been suppressed. *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

In *Spinelli,* the argument was made that an unreliable tip about the criminal activity of a known gambler coupled with police observations of innocent conduct could, when considered together, sustain a finding of probable cause. The prosecution argued "that the informant's tip gives a suspicious color to [the defendant's] innocent-seeming conduct in that, conversely [the police observation] corroborates the informant's tip, thereby entitling it to more weight." This reasoning was specifically rejected and *Spinelli* refused to give *Draper* such an interpretation. *Spinelli* is almost identical to the case before us and is controlling. The arrest and search in this case were unconstitutional, and the evidence should have been suppressed.

The judgment of sentence should be reversed and a new trial awarded.

Mr. Justice ROBERTS joins in this dissenting opinion.