■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOAQUIN NIEVES, Appellant.—Judgment, Supreme Court, New York County, rendered April 26, 1973, convicting defendant of criminal possession of a dangerous drug in the second degree and sentencing him to an indeterminate term of imprisonment not to exceed 12 years, unanimously reversed, on the law and the facts, the motion to suppress granted and the indictment dismissed. Shortly after four in the morning of June 10, 1970, the defendant stopped his car for a traffic light at 32nd Street and Fifth Avenue in New York City. A police detective, Novoa, walked up to the driver's side, identified himself, ordered the defendant out of the car, searched it and found some 15 ounces of cocaine. Convicted of possession of a dangerous drug after trial, the defendant claims to have been the victim of an illegal search and that the court erred in denying his pretrial application to suppress the seized evidence. We agree. It is the contention of the prosecution, and was at the suppression hearing where only Novoa testified, that the probable cause for the search had arisen a few minutes before, outside of the Cafe Madrid on 14th Street. The detective, an expert on the narcotics trade, had been watching the cafe since nine o'clock the night before. He knew from experience that it was a center of the drug traffic and that narcotics were commonly transported in plastic or cellophane bags. Novoa testified that at 3:45 A.M., while standing 100 to 150 feet away, he saw the defendant enter

the cafe carrying a tabloid-size newspaper in his hand. He had never seen the defendant before; he knew nothing about him. At four o'clock the lights in the cafe were turned off and 10 minutes later the defendant came out. "At this time, Mr. Nieves had a newspaper under his arm folded. In the newspaper I could see a brown paper bag, and at the top of the paper bag, was plastic, looked like plastic at the top." Novoa stated that, impelled by this sight, he followed the defendant's car, lost him once, found him again and made the search at 32nd Street and Fifth Avenue. Upon cross-examination Novoa testified that before the defendant came out of the cafe he had shifted his lookout position to a doorway 30 to 50 feet away on the same side of the street. From this point, he could see the defendant's side only at that moment when the defendant left the building, then see his back as the defendant crossed the sidewalk and street to his car. In an answer to the court, Novoa said that he could not tell if there was anything in the bag, that all he could see was "the very edge, the top brown edge of the bag." He later reasserted that he had seen about two inches of plastic or cellophane above this edge of the bag. The prosecution contends that given all of these circumstances—the character of the cafe as it was known to Novoa, the defendant's departure after closing hours, Novoa's expertise, especially his knowledge that narcotics were commonly transported in plastic bags—that the sight of the plastic or cellophane inside the newspaper gave Novoa probable cause for the search. We must first, however, deal with the disturbing question of Novoa's credibility. Certain aspects of his testimony are puzzling. While he graphically described the defendant's entry into the Cafe Madrid, even to the size of his newspaper and how it was carried, he admitted that on a prior hearing he had been unable to remember the defendant going into the cafe. He admitted that at the same hearing he had made no mention of a brown paper bag having been found when the car was searched, while at the suppression hearing he testified that the cocaine was found in a plastic bag in a brown paper bag. Although it was the prosecution's position that probable cause arose at the Cafe Madrid, it was the thrust of Novoa's testimony at the suppression hearing that he had entered the defendan.'s car not because of what he had seen back on 14th Street, but because he had to turn off the ignition, the defendant having refused to obey his order to do it. Apart from these peculiarities, we find Novoa's testimony as detailed above incredible. We are unable to believe that, in the brief glimpse that Novoa had of the defendant in the dark of night from a distance of at least 30 feet, he was able to see two inches of plastic protruding from a bag which was enclosed in a newspaper and tucked under the defendant's arm. If found credible, Novoa's testimony would not constitute probable cause. Its essence is that he observed a stranger, with a folded newspaper under his arm from which an edge of brown paper and two inches of plastic were showing, leave a bar known for its narcotics traffic shortly after it closed. "Although the observed acts of the defendant * * * were not inconsistent with a culpable narcotics transaction, they were also susceptible of many innocent interpretations * * * The behavior, at most 'equivocal and suspicious,' was not supplemented by any additional behavior raising 'the level of inference from suspicion to probable cause' " *(People v Brown,* 24 NY2d 421, 423). Concur—Stevens, P. J., Murphy, Tilzer and Capozzoli, JJ.