THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SHELDON CUNNINGHAM, Appellant.

Second Department, December 15, 1975

*James J. McDonough (Eugene Murphy* and *Matthew Muraskin* of counsel), for appellant.

*Denis Dillon, District Attorney (Allan M. Stern* and *Anthony J. Girese* of counsel), for respondent.

COHALAN, J. The defendant was indicted for criminal possession of a controlled substance in the fifth degree. He moved to suppress the evidence against him on constitutional grounds. The motion was denied after a hearing. He then interposed a plea of guilty to the crime of criminal possession of a controlled substance in the sixth degree, a class D felony. At issue on this appeal are questions of the propriety of the search and seizure and whether there was probable cause for Cunningham's arrest.

A recitation of the facts is necessary in order to grasp the problem. At about 10:20 on the evening of August 8, 1974, two plainclothes policemen in an unmarked car were patrolling a residential section of Hempstead, in Nassau County, looking for an arson suspect dressed in a burgundy-colored suit. They found no trace of him. Instead they spotted—from a distance of approximately 100 feet—a group of three men and a boy. One of the men, who was wearing a floppy hat, appeared to the police officers to be passing paper money to the defendant, who then handed him a brown envelope. Except for the headlights of the car, the nearest illumination was an overhead street light some 30 feet from the scene. When the car came abreast of the group, three of the four persons unhurriedly departed, leaving the defendant standing there alone. The driver made a U-turn and came to a stop near him.

Under questioning, the defendant, Cunningham, gave his true name and an address. At the request of the officers, he showed them the contents of a bag which he was carrying; there was no contraband in the bag. He also told them where and by whom he was employed. Upon being asked for written identification, he placed one hand in a back pocket and then began to move away at a rapid pace.

The officers stopped him. One yanked his arm out of his pocket, dislodging a plastic bag containing what the officer thought was marijuana. Cunningham was thereupon arrested and given his *Miranda* warnings. He then stated that the substance in the bag was indeed marijuana.

At the hearing, the defendant explained that his haste to leave the scene was because he wanted to catch a bus. He said, too, that he and the man in the floppy hat were friends; that they had been discussing plans for the morrow; and that the so-called counting out of money in his hand was actually the palm to palm exchange practiced by Blacks in lieu of the conventional handshake. Or, as defendant phrased it, "and I

gave them like this [slapping hands together], like usually most black people do like that."

CPL 140.50 provides, in part, that: "1. * * * a police officer may stop a person in a public place * * * when he reasonably suspects that such person is committing, has committed or is about to commit either (a) a felony or (b) a misdemeanor * * * and may demand of him his name, address and an explanation of his conduct." This section is popularly known as the "stop and frisk" law.

Cunningham complied with the three statutory requirements of name, address and explanation, even to the extent of displaying the items in the bag he was carrying and, as noted, he told the officers where he worked. At that point, surely, he was no source of danger to the police officers and was, or should have been, free to go on his way without let or hindrance.

The case of *People v Cantor* (36 NY2d 106) answers the current problem in part. There, the defendant was under police surveillance in his apartment, and later in his car as the police tailed him. As Cantor alighted from his car, the three plainclothes officers encircled him. Cantor allegedly then drew a gun, in the belief, as he later testified, that the three were potential robbers.

The Court of Appeals said (pp 112–113): "Before a person may be stopped in a public place a police officer must have reasonable suspicion that such person is committing, has committed, or is about to commit a crime (CPL 140.50). Reasonable suspicion is the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand * * * To justify such an intrusion, the police officer must indicate specific and articulable facts which, along with any logical deductions, reasonably prompted that intrusion. Vague or unparticularized hunches will not suffice".

At bar, the actions of the defendant before the police accosted him were as consistent with innocence as with guilt; the question is not what was subsequently found upon his person, but whether the police had a right to look for anything. The cases cited by the People are readily distinguishable. Thus, in *People v Rosemond* (26 NY2d 101), the police actually watched a burglary in progress; in *People v Archiopoli* (39 AD2d 748), when the officer approached the defendant, he fled the scene and then assaulted the policeman when

apprehended; and in *People v Rivera* (14 NY2d 441), in a high crime area, the suspicious actions of the defendant alerted the officer to his illegal activity.

Nor are the cases of *People v White* (16 NY2d 270) or *People v Cohen* (23 NY2d 674) in point. The former case dealt with a known drug dealer; the latter case with a conversation respecting the sale of drugs, which conversation was overheard by the police officer, who had obviously been close by.

In *People v Brown* (24 NY2d 421), which also brought up for review the denial of a suppression motion, which was followed by a plea of guilty, the Court of Appeals overturned the conviction. There, a detective working in a high crime area, and observing a person whom he suspected to be a narcotics addict, made an arrest because he believed a sale of narcotics was in progress. The court noted that (p 423): "Although the observed acts of the defendant and the suspected narcotic addict were not inconsistent with a culpable narcotics transaction, they were also susceptible of many innocent interpretations, even between persons with a narcotics background. The behavior, at most 'equivocal and suspicious', was not supplemented by any additional behavior raising 'the level of inference from suspicion to probable cause' (see *People v Corrado,* 22 N Y 2d 308, 311, 313)."

Here, the defendant was a complete stranger to the officers on the scene; his actions were as consistent with innocence as they were with guilt; they saw him from a distance of 100 feet and, to this day, there is no proof as to what was in the envelope the defendant handed to the man in the floppy hat. To the officers it was a case of misapplied serendipity. They did not find what they sought, i.e., the man in the burgundy-colored clothes, and, in finding Cunningham unexpectedly, they overreacted and exceeded their authority.

Accordingly, the judgment of conviction should be reversed, the motion to suppress granted and the indictment dismissed.

RABIN, Acting P. J., and MARGETT, J., concur with COHALAN, J.; MARTUSCELLO and MUNDER, JJ., dissent and vote to affirm the judgment.

Judgment of the County Court, Nassau County, rendered February 14, 1975, reversed, on the law and the facts, motion to suppress physical evidence granted, and indictment dismissed.