422 A.2d 1119

**COMMONWEALTH of Pennsylvania**

v.

**Lamar T. ZIMMERMAN, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 5, 1979.

Filed Nov. 14, 1980.

Petition for Allowance of Appeal Denied May 11, 1981.

---

288

Burton A. Rose, Philadelphia, for appellant.

John T. Salvucci, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before PRICE, WATKINS and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that: (1) his warrantless arrest lacked probable cause; (2) the lower court should have suppressed certain evidence seized unlawfully and/or tainted by his unlawful arrest; (3) the search warrants were based upon material misrepresentations and/or were tainted by evidence received in prior illegal searches; (4) the lower court improperly restricted cross–examination of an affiant regarding the reliability of a confidential informant; and (5) his sentence is excessive and lacks a sufficient statement of rea-

sons.[1]   We disagree and, accordingly, affirm the judgment of sentence.

## I.  FACTS

In June, 1977 a confidential informant told Trooper White of the state police that appellant was operating a methaqualone manufacturing laboratory.   Although the informant did not substantiate this information, he had previously given the troopers information which had led to numerous arrests and convictions.   On August 1, 1977, the informant told Trooper White and Corporal Bason that he and several of his associates were negotiating with appellant for the purchase of the laboratory.   The informant also told the troopers that Maurer and "Herb" assisted appellant in his drug operation, and that on July 30, 1977, he had been in the basement of 759 Queen Street where he had observed the pill press and some white powder used to make tablets.   Additionally, he described the external characteristics of the building, including the entrances.   On the evening of August 1, Trooper White, who initiated surveillance, saw that the building was dimly lit and heard a loud exhaust fan at the rear of the building.   At about 12:20 a. m. on August 2, Trooper White

1.   Appellant contends that unspecified statements made by him should be suppressed as the fruit of the unlawful arrest.   Because we conclude that the arrest was lawful and because appellant raises no *Miranda* issue, we need not address that issue.

Appellant has raised several other issues:   (1) that the lower court erred in refusing to grant a mistrial during direct examination of a Commonwealth witness wherein reference was made to the production of methamphetamine;   (2) that the lower court erred in overruling appellant's objection to the district attorney's closing argument wherein he referred to appellant's "big money" and ownership of a country club;   (3) that the lower court erred in charging the jury concerning the policy of protecting from disclosure the identity of a confidential informant;   and, (4) that the lower court erred in refusing appellant's motion for a change of venue.   We need not address these issues because they were not properly preserved for appeal due to appellant's failure to brief or orally argue the points before the lower court in his post–trial motions.   *See Commonwealth v. Van Cliff,* 483 Pa. 576, 579 n. 2, 397 A.2d 1173, 1175 n. 2 (1979); *Commonwealth v. Williams,* 476 Pa. 557, 570 n. 11, 383 A.2d 503, 508, 509 n. 11 (1978);   *Commonwealth v. Marcocelli,* 271 Pa.Super. 411, 417, 413 A.2d 732, 735 (1979);   *Commonwealth v. Holzer,* 480 Pa. 93, 100, 389 A.2d 101, 105 (1978).

saw an individual leave the rear entrance of 759 Queen Street and walk onto a parking lot at the rear of 762 High Street, appellant's residence.[2]

On August 2, at 8:05 a. m., Trooper White again contacted the informant. The informant now warned that appellant would probably dismantle the laboratory that very day. Appellant purportedly was having difficulty in the operation and was concerned that the police had discovered the laboratory. White and Bason, concluding that immediate action was necessary, began preparations to obtain a search warrant. They dispatched Troopers Mateleska and Kaunert to the area of 759 Queen Street at 10:45 a. m. on August 2. Those troopers were aware of the information revealed by the informant and were instructed to watch the building and secure the area until a search warrant could be obtained. While stationed across from the residence, the troopers saw two men leave the area of 762 High Street and enter the rear basement door of 759 Queen Street. Twenty minutes later, at 11:40 a. m., the two men exited the building. One carried an object which appeared to be a machine. He emptied some liquid from it and placed it into the trunk of an automobile parked in the lot behind 759 Queen Street. Meanwhile, the companion stood on the basement steps and kept a look–out.

The troopers, concerned that the men were in the process of dismantling the laboratory, approached the two and requested identification. The men identified themselves as Paul Maurer and Doctor Lamar T. Zimmerman. The troopers placed both men under arrest and Mateleska read them their constitutional rights. Soon thereafter, noises were heard from the basement. Concerned about their safety and further destruction of the laboratory, Trooper Mateleska asked appellant if anyone else was in the building. According to the troopers, appellant replied, "No one else is in there, go ahead and look." Appellant denies that he made

2. Queen Street and High Street are parallel, and the rear of a property on Queen Street is adjacent to the rear of a High Street parcel.

that statement. Mateleska entered the basement of 759 Queen Street and looked around for other individuals. During that brief search, the troopers saw the pill press, white powder, and tablets.

Mateleska then placed a call to his superiors, informed them of the events which had transpired, and requested assistance from them. This additional information was incorporated into the affidavit which White and Bason were preparing. Search warrants issued for 757 and 759 Queen Street and 762 High Street were executed on the afternoon of August 2.

Appellant was charged with various violations of the Controlled Substance, Drug, Device and Cosmetic Act, conspiracy, and risking a catastrophe. Following the denial of appellant's suppression motion, the case came to jury trial. Appellant was found guilty of the drug related counts and was sentenced to three–and–one–half–to–seven years, fined $35,000.00 and charged the costs of prosecution. Upon the denial of post–verdict motions, appellant took this appeal.

II. ARREST

■ Appellant contends that his warrantless arrest was not based upon probable cause.[3] We disagree. "It is well established that a police officer is authorized to arrest without a warrant when he has probable cause to believe that a felony has been committed and that the person to be arrested is the felon." *Commonwealth v. Jones*, 233 Pa.Super. 461, 464, 335 A.2d 789, 791 (1975) (citations omitted). This Court, in *Commonwealth v. Donnelly*, 233 Pa.Super. 396, 404, 336 A.2d 632, 636 (1975), summarized the law of probable cause as follows:

Probable cause to justify a warrantless arrest exists if the facts and circumstances known to the officer at the time of the arrest would warrant a prudent man in believing that an offense had been committed, and the

3. Appellant does not contend that the initial stop and request for identification was unlawful. *See Adams v. Williams*, 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1922–23, 32 L.Ed.2d 612 (1972); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

suspect was the perpetrator of the offense. *Terry v. Ohio,* 392 U.S. 1, [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968); *McCray v. Illinois,* 386 U.S. 300, [87 S.Ct. 1056, 18 L.Ed.2d 62] (1967); *Commonwealth v. Smith, supra,* [201 Pa.Super. 511, 193 A.2d 778]; *Commonwealth v. DeFleminique,* 450 Pa. 163, 299 A.2d 246 (1973); *Commonwealth v. Brown,* 230 Pa.Super. 214, 326 A.2d 906 (1974). These facts and circumstances, however, are not those that a legal technician might desire when examining the situation in retrospect; but, rather, the practical considerations of everyday life upon which reasonable and prudent men rely. *Henry v. United States,* 361 U.S. 98, [80 S.Ct. 168, 4 L.Ed.2d 134] (1959); *Draper v. United States, supra,* [358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327]; *Commonwealth v. Negri,* 414 Pa. 21, 198 A.2d 595 (1964). In any event, probable cause means less evidence than that which justifies convictions. *Wong Sun v. United States,* 371 U.S. 471, [83 S.Ct. 407, 9 L.Ed.2d 441] (1963); *Commonwealth v. Anderson,* 224 Pa.Super. 19, 302 A.2d 504 (1973). See generally Annot., 28 L.Ed.2d 978 (1971) (collecting cases defining probable cause); 4 *Wharton's Criminal Evidence* § 721 (13th ed. C. Torcia 1973).

Appellant concedes that the troopers had " 'information' that a 'laboratory' was being dismantled by a man not known to them by sight." Nevertheless, appellant argues that the Commonwealth could not rely upon this tip to establish probable cause because neither the underlying circumstances upon which it was based nor the reliability of the informant were shown. *See Betrand Appeal,* 451 Pa. 381, 303 A.2d 486 (1973). In *Commonwealth v. Norwood,* 456 Pa. 330, 319 A.2d 908 (1974), however, our Supreme Court stated:

> We need not decide whether this tip, standing alone, would meet the requirements of *Spinelli v. United States,* 393 U.S. 410, [89 S.Ct. 584, 21 L.Ed.2d 637] (1969) and *Aguilar v. Texas,* 378 U.S. 108, [84 S.Ct. 1509, 12 L.Ed.2d 723] (1964), because the arresting officer in this case gained additional crucial information from his personal observations prior to the arrest of appellant.

*Id.*, 456 Pa. at 333, 319 A.2d at 909 (footnote omitted). *Accord, Commonwealth v. Legg*, 258 Pa.Super. 294, 298, 392 A.2d 801, 803 (1978), citing *Whitely v. Warden*, 401 U.S. 560, 567, 91 S.Ct. 1031, 1036, 28 L.Ed.2d 306 (1971). "[T]he additional information acquired by the arresting officers must in some sense be corroborative of the informer's tip that the arrestees committed the felony or, as in *Draper* itself, were in the process of committing the felony." *Whitely v. Warden, id.* at 567, 91 S.Ct. at 1036. Measured by that standard, the troopers' observations on the morning of August 2 sufficiently corroborated the informer's statements. The troopers saw two men leave appellant's residence, enter the premises suspected to be the laboratory, and then saw one carry out a piece of machinery and place it into the trunk of a waiting automobile while the other man kept a look-out. These men identified themselves as Maurer and appellant. "This information strongly reinforces the tip ..." that the men were in the process of dismantling the laboratory. *Commonwealth v. Norwood, supra* 456 Pa. at 333, 319 A.2d at 909. Thus we conclude that, at the time of arrest, the troopers had knowledge of sufficient facts and circumstances to warrant a prudent man in believing that appellant had committed or was committing a crime.[4]

## III. THE SEARCH OF 759 QUEEN STREET

■ Appellant contends that Trooper Mateleska conducted an unlawful warrantless search of 759 Queen Street. We disagree. Although the search was made after the arrest and before the arrival of the warrant, we conclude that the search, if it be deemed such, was valid because appellant consented to the search.[5] *See Commonwealth v. Donnelly, supra* 233 Pa.Super. at 406–07, 336 A.2d at 637–38; *Commonwealth v. Smith*, 201 Pa.Super. 511, 193 A.2d 778 (1963).

4. Because we conclude that appellant's arrest was lawful, we need not separately address appellant's arguments that certain after–acquired information was the fruit of the unlawful arrest.

5. Because we conclude that the initial search of 759 Queen Street was valid, appellant's contention that the incorporation of Mateleska's observations into the application for the search warrant impermissibly tainted the subsequent warrants is without merit.

Appellant stated, in response to a question, that no one was in the basement and voluntarily told the troopers to take a look. This is comparable to the situation in *Donnelly* and *Smith* where this Court upheld searches made upon the consent of a defendant while in custody.

## IV. SEARCH WARRANTS PROCURED UPON MISSTATEMENTS OF FACT

Appellant contends that the search warrants issued for 757 and 759 Queen Street were invalid because they were procured on the basis of material misrepresentations of fact made to the issuing authority.[6] Appellant alleges three misstatements: (1) that the informant supplied information leading to "at least" seven arrests and convictions; (2) that the informant supplied "all" the information leading to said arrests; and, (3) that Felix Zimmerman, record owner of 759 Queen Street, was the father of appellant. In *Commonwealth v. Tucker*, 252 Pa.Super. 594, 384 A.2d 938 (1978), this Court stated:

In order to secure a valid search warrant, an affiant must provide a magistrate with information sufficient to persuade a reasonable person that there is probable cause for a search. The information must give the magistrate the opportunity to know and weigh the facts and to determine objectively whether there is a need to invade a person's privacy to enforce the law. *Commonwealth v. D'Angelo*, 437 Pa. 331, 336–37, 263 A.2d 441, 444 (1970), and cases therein cited. In *D'Angelo*, the court held invalid a search warrant based upon the affiant's misstatement of a fact. Later cases have held, however, that misstatements of fact will invalidate a search warrant and require suppression of the fruits of the search only if the misstatements of fact are *deliberate* and *material*. *Commonwealth v. Scavincky*, 240 Pa.Super. 550, 556, 359 A.2d

**6.** Appellant contends that the search warrant for 762 High Street was based upon evidence illegally seized prior thereto. Because we conclude that the arrest, initial search of 759 Queen Street and the search warrants for 757 and 759 Queen Street were all proper, that contention is without merit.

449, 452 (1976); *Commonwealth v. Jones*, 229 Pa.Super. 224, 230, 323 A.2d 879, 881 (1974), *allocatur denied*, 229 Pa.Super. xxxv. A material fact is one without which probable cause to search would not exist. *Commonwealth v. Scavincky*, 240 Pa.Super. at 556, 359 A.2d at 452; *Commonwealth v. Jones*, 229 Pa.Super. at 230, 323 A.2d at 881.

*Id.*, 252 Pa.Super. at 598–99, 384 A.2d at 941. Thus appellant must establish that the police (1) made a misstatement, which is both (2) deliberate and (3) material.

The lower court concluded that any flaws in the affidavit were minimal and immaterial. We agree. First, appellant does not contest, and the record amply demonstrates, that the informant provided information which led to seven arrests and convictions. Secondly, the fact that the arrests resulted in two indictments (one of two defendants, the other five) is wholly irrelevant. Thirdly, we agree that the use of the phrase "at least" in describing the prior performance of the informant is immaterial and not a deliberate attempt to mislead the issuing authority. As the lower court correctly observed, the affidavit neither stated nor implied that the informant had been the exclusive source of information leading to the prior arrests. Therefore we conclude that the warrants were valid.[7]

## V. ABBREVIATION OF CROSS–EXAMINATION

■ Appellant contends that the lower court improperly restricted his cross–examination of Trooper White, the affiant in the application for the search warrant. We disagree. In *Commonwealth v. Hall*, 451 Pa. 201, 302 A.2d 342 (1973), the Supreme Court reversed and remanded for a new suppression hearing when the lower court had curtailed cross–examination at the suppression hearing which was designed to probe the veracity of facts recited in the affidavit estab-

---

7. We agree with the lower court that the alleged misstatement regarding Felix Zimmerman is immaterial and not a deliberate attempt to mislead the issuing magistrate. Moreover, there is no indication in the record that Felix Zimmerman was not appellant's father.

lishing probable cause. The defense attorney there had requested the names of the persons arrested as a result of the information supplied by a confidential informant. In approving such a line of inquiry, the Court reasoned that to deny that opportunity to test the recitals would permit the police to exaggerate or fabricate the facts given to the magistrate merely for the purpose of meeting the probable cause requirement and would be contrary to the requirement that the issuing authority make a detached and objective determination of probable cause. 451 Pa. at 204–05, 302 A.2d at 343–44. The Court further stated:

[T]he allegation of "5 arrests and 3 convictions" resulting from an unnamed informant's earlier information is an assertion that is impossible for a defendant to explore prior to the suppression hearing, and is clearly a proper subject for inquiry there. . . . Indeed, the only existing method to effectively probe the veracity of the assertion is to allow a defendant meaningful cross–examination of the police officer–affiant at the suppression hearing. . . .

It must be concluded that appellant at the suppression hearing should have been afforded the opportunity through "the traditional safeguard" of cross–examination, to test the truthfulness of the recitals in the warrant alleging the informant's previous reliability.

451 Pa. at 207–08, 302 A.2d at 345–46 (footnote omitted).

■ On direct examination, Trooper White testified to the names of the seven arrestees, the dates of convictions, and the counties in which the convictions occurred. The Commonwealth offered into evidence certified extracts of the court records pertaining to the seven arrestees. At the discovery hearing and during cross–examination, appellant's counsel requested the complete files on each of the seven arrestees. Appellant contends that he is entitled to inquire into the statements made by the informant in each case and to ascertain whether the informant had previously supplied false information. At that point, the lower court stated that there would not be a separate hearing on each file. We conclude that the lower court acted consistently with the

mandate of *Hall*. Appellant requested and received the names, court terms, and numbers of the prior arrestees. Moreover, unlike *Commonwealth v. Bailey*, 460 Pa. 498, 505, 333 A.2d 883, 886 (1975), the magistrate had more than the general information that the informer had previously provided reliable information. Appellant does not contend that he could not attack the affidavits on any other basis and does not assert that the informant did not provide the information which led to the prior arrests and convictions. Thus, we are not dealing with a situation where the appellant has been able to make a preliminary showing of any material misstatement of fact, knowingly, intentionally, or recklessly made to influence the magistrate. *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *Commonwealth v. Monte*, 459 Pa. 495, 329 A.2d 836 (1974); *Commonwealth v. Jones*, 229 Pa.Super. 224, 323 A.2d 879 (1974). Our cases establish that the lower court has the discretion to control the cross–examination of witnesses. *See Commonwealth v. Conard*, 206 Pa.Super. 33, 211 A.2d 14 (1965). We conclude that the lower court did not abuse its discretion in restricting the examination of Trooper White.

## VI. SENTENCING

Appellant contends that his sentence was excessive and not sufficiently supported by a statement of reasons. We disagree. Appellant was sentenced to three–and–one–half–to–seven years imprisonment, fined $35,000.00, and charged costs for his four violations of the Controlled Substance, Drug, Device and Cosmetic Act. That sentence is within the limits established by the Act and we do not find it excessive. *Id.*, § 13(b)–(h), 35 P.S. § 780–113(b)–(h). In *Commonwealth v. Martin*, 466 Pa. 118, 133, 351 A.2d 650, 658 (1976), the Supreme Court stated that the individualized determination inherent in the sentencing process required, at the minimum, a consideration of the particular circumstances of the offense and the character of the defendant. *See also Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977). In *Commonwealth v. Pauze*, 265 Pa.Super. 155, 158,

401 A.2d 848, 849 (1979), this Court noted that great deference is to be given to the trial court's discretion in sentencing, and that the reasons therefor must be set out in the record so that a determination can be made that discretion was, in fact, exercised. No case has held that the Sentencing Code, 18 Pa.C.S. § 1301 *et seq.*, states the exclusive and inflexible criteria in the sentencing process. Indeed, our cases hold that a statement of reasons should not be held insufficient when it is apparent that the court considered and applied the Code even though it made no explicit reference to those guidelines. *Commonwealth v. Wicks*, 265 Pa.Super. 305, 313, 401 A.2d 1223, 1227 (1979); *Commonwealth v. Wareham*, 259 Pa.Super. 527, 534, 393 A.2d 951, 954 (1978).

Our review of the record reveals that the lower court complied with the mandates of *Martin* and *Riggins*. The sentencing colloquy amply shows that the lower court was aware of appellant's background information and gave long and deliberate consideration to the details. The court was aware of the public service of appellant and the high esteem in which appellant was held. The court was also aware of the impact that the case would have on the professional future of appellant. The court was also aware, however, of the grave charges brought against appellant. Counsel had the opportunity to make argument and present relevant information. *Commonwealth v. Wareham, supra* 259 Pa.Super. at 533, 393 A.2d at 953. Although not phrased in the vernacular of the Sentencing Code, the lower court's statement underscores its concern that a lesser sentence would depreciate the seriousness of the crime, 18 Pa.C.S. § 1325(3), and indicates that correctional treatment could best be provided by commitment to an institution, *id.*, § 1325(2). Moreover, the imposition of the fine was proper under the Sentencing Code. *Id.*, § 1326(b). Under these circumstances, the lower court was sufficiently explicit in stating its reasons for imposing the sentence, and we will not disturb the exercise of its discretion.

Judgment of sentence affirmed.