The People of the State of New York, Respondent, v Kenneth Parent, Appellant.

The People of the State of New York, Respondent, v James D. Zurn, Appellant.

Fourth Department, November 7, 1984

APPEARANCES OF COUNSEL

*Gerald T. Barth* (*James M. Dungan* of counsel), for appellants.

*Richard A. Hennessy, District Attorney* (*John A. Cirando* and *Michael P. Marmor* of counsel), for respondent.

OPINION OF THE COURT

Green, J.

The issue presented is whether the forcible stop of the car in which defendants were riding was based upon constitutionally permissible factors or upon mere whim and caprice.

The arresting officer, off duty at the time, received a call from a neighbor that she observed an unfamiliar car proceed down the street in front of her house, make a U-turn

and then stop. She observed three men exit the car and walk down the street. The officer then left his house dressed in civilian clothes. He noticed three men, who appeared to be in their late teens or early twenties, walking down the street toward him. He observed that the trio stopped talking as they approached and he noticed them glance back at him as they continued toward their car. According to the officer, based upon his experience, his residence in the neighborhood, and his belief that these actions fit within the typical *modus operandi* for burglars, he decided to confront the men to ascertain their identity. He displayed his badge and revolver and stepped into the street directly in front of the car. He pointed his gun at the windshield, identified himself, and yelled "hold it, I want to talk to you." He then ordered the three men out of the car and frisked each one for weapons. No weapons were found, but a controlled substance was seized from defendant Zurn. A subsequent search of the car revealed various items stolen in a burglary earlier that evening.

Once the officer blocked the path of the car and pointed his gun at the windshield, the defendants were seized (see *Terry v Ohio,* 392 US 1, 16; *People v Ingle,* 36 NY2d 413, 418). The question presented is whether the seizure was based on reasonable suspicion or probable cause (see *People v Cantor,* 36 NY2d 106, 112-113). The record here is bare of any objective evidence of criminal activity. There was nothing suspicious or even particularly unusual about the actions of the three men (see *People v Corrado,* 22 NY2d 308, 311). A brief pause or glance by the defendants, or the officer's instinct or intuition is not enough to justify the stop (see *People v Sobotker,* 43 NY2d 559, 564). The fact that the officer was a resident of the neighborhood was fortuitous.

In substance, all the officer observed was three men walking down a street in a residential neighborhood who stopped talking and glanced over their shoulders as the officer passed by. This conduct is far more easily explained by the typical activities of three innocent pedestrians than by the officer's characterization of the *modus operandi* used by a burglar (see *People v Corrado,* 22 NY2d 308, 311, *supra*). A brief glance or a pause cannot turn "what was

unremarkable behavior quantitatively into conduct that had qualitative significance" (see *People v Sobotker,* 43 NY2d 559, 564, *supra*). As Judge Brietel observed "[t]he logical and practical problem is that even accepting * * * as one should, the police officer's expertness in detecting a pattern of conduct characteristic of a particular criminal activity, the detected pattern, being only the superficial part of a sequence, does not provide probable cause for arrest if the same sketchy pattern occurs just as frequently or even more frequently in innocent transactions. The point is that the pattern is equivocal and is neither uniquely nor generally associated with criminal conduct, and unless it is there is no probable cause" (*People v Brown,* 24 NY2d 421, 424).

Since the initial stop of the defendants was unlawful the evidence thereafter acquired must be suppressed absent an independent establishment of probable cause (see *Chambers v Maroney,* 399 US 42; *People v Loria,* 10 NY2d 368). Here, there was no objective evidence evincing criminal activity (see *People v Bryant,* 37 NY2d 208; *People v Brown,* 24 NY2d 421, *supra*). The police officer lacked independent knowledge that a crime had been committed (see *People v Hunter,* 30 NY2d 774) and the defendants' behavior was neither furtive nor evasive (cf. *People v White,* 16 NY2d 270, cert den 386 US 1008). We conclude, therefore, that the seizure under the facts here presented was not predicated on specific articulable facts and hence, was not justified (see *People v Cantor,* 36 NY2d 106, 113, *supra*).

The cases cited in the dissent are distinguishable. In *People v Landy* (59 NY2d 369), the car matched a detailed description of one used by a suspect in several neighborhood burglaries; in *People v Johnson* (102 AD2d 616), the arresting officer knew a robbery had just occurred, knew the *modus operandi* resembled that used in a similar robbery the night before and testified that the defendant looked "startled" or "shocked" *before* the defendant's car was stopped.

Here, the officer could not point to any specific and articulable facts to justify his intrusion. "While the police should be accorded great latitude in dealing with those situations with which they are confronted it should not be

at the expense of our most cherished and fundamental rights. To tolerate an abuse of the power to seize or arrest would be to abandon the law-abiding citizen to the police officer's whim or caprice — and this we must not do. Whenever a street encounter amounts to a seizure it must pass constitutional muster" (*People v Cantor,* 36 NY2d 106, 112, *supra*). In our view, the encounter in the instant case does not pass that test. Accordingly, the judgment should be reversed and the motion to suppress granted.

SCHNEPP, J. (dissenting). We agree that the police action constituted a forcible stop and detention of the automobile operated by defendant Zurn in which defendant Parent was a passenger within the meaning of CPL 140.50 and *Terry v Ohio* (392 US 1). We dissent, however, because in our view the police conduct was based on reasonable suspicion of criminal activity (see, e.g., *People v Landy,* 59 NY2d 369, 376; *People v De Bour,* 40 NY2d 210, 223; *People v Ingle,* 36 NY2d 413; *People v Johnson,* 102 AD2d 616) and not on a "[v]ague or unparticularized" hunch (*People v Cantor,* 36 NY2d 106, 113). The facts developed at the suppression hearing established that the incident occurred after 8:00 P.M. on January 3, 1983 in a wholly residential neighborhood. The automobile did not merely make a U-turn but rounded the corner at a high rate of speed, spun around and stopped in the street. The defendants exited from the vehicle and hurried around the corner on foot. Officer Scharoun deduced from these facts that a stolen vehicle might have been abandoned and he went outside to investigate. There was a fresh covering of snow. He observed that the occupants of the car, which was the only one parked on the street, had not gone to any nearby house but had proceeded away from the area on foot. After following their footprints in the snow, he observed the defendants returning toward the car. In his view their behavior was suspicious and furtive. At this point the officer's knowledge of the area and his experience became significant. He knew that the defendants were not from the neighborhood, in which, to his knowledge, there had been approximately 60 burglaries during the past year, many of which had been reported directly to him. Based on this knowledge and his nine years' experience as a police officer, he reasonably concluded that the defendants' actions

and conduct fit the typical *modus operandi* of burglars and that criminal activity was afoot. We would hold that there are sufficient and articulable facts in the record to justify the police officer's subsequent stop and seizure of the defendants.

DILLON, P. J., and HANCOCK, JR., J., concur with GREEN, J.; SCHNEPP, J., dissents and votes to affirm the judgments in a separate opinion in which MOULE, J., concurs.

Judgments reversed, on the law and facts, motions to suppress granted and matter remitted to Onondaga County Court for further proceedings on the indictment.