384 A.2d 938

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Rocke S. S. TUCKER and Dean Sparling, Appellees.**

Superior Court of Pennsylvania.

Submitted March 24, 1977.

Decided April 13, 1978.

Stephen B. Harris, First Assistant District Attorney, War-
rington, for Commonwealth, appellant.

George E. Goldstein, Philadelphia, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, President Judge:

■ Appellees Tucker and Sparling were charged with the crimes of burglary, theft, receiving stolen property, and conspiracy. The Commonwealth here appeals the trial court's order suppressing all the evidence gained through the use of an allegedly defective search warrant.[1] The sole issue before us is whether a deliberate misstatement of fact in an affidavit for a search warrant always invalidates the warrant. We hold that it does not and reverse the suppression order of the court below.

Testimony at appellees' nonjury trial established that on October 18, 1975, two white males entered the Country Host Restaurant in Solebury Township, Bucks County, and without permission, removed a quantity of roast beef, bacon, and other meat products from a walk-in refrigeration unit. Two restaurant employees observed the men and described both of them to police as being approximately six feet four inches tall and as wearing faded blue jeans, and ski masks. One was described as wearing a "V" neck brown sweater and the other as wearing a blue flannel shirt with red and black plaid stripes. Neither employee saw the men leave the area after they exited from the restaurant. A third employee, then on his way to work, stated that two vehicles, one a blue Falcon, and the other a later model vehicle with "high tail fins" and with a dent and gray primer paint on the driver's side, came speeding out of the restaurant parking lot shortly after the time of the burglary.

---

1. The Commonwealth is entitled to appeal this suppression order because the order could necessitate the termination of the prosecution or substantially impair the presentation of its case. *Commonwealth v. Gullett,* 459 Pa. 431, 435, 329 A.2d 513, 515 (1974); *Commonwealth v. Bosurgi,* 411 Pa. 56, 63–4, 190 A.2d 304, 308 (1963), cert. denied, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963). No motion to quash has been made and we will hear the appeal.

Approximately one-half hour following the burglary, the police located the two vehicles thought to be those described by the third employee in a nearby parking lot. The car with the big tail fins was a Plymouth and the car which had been described as a Falcon was, in fact, a Buick.

On the seat of the Plymouth, in plain view of the police, were ski masks matching the description of those worn by the alleged burglars. While the police were standing in the parking lot observing the cars, two white males, one wearing a blue shirt with red and black plaid stripes and the second wearing jeans and a brown "V" neck sweater appeared from the area of a nearby apartment. The one wearing the shirt entered the Buick. Both men were immediately placed under arrest.

The police then proceeded to a magistrate's office where they obtained a warrant to search the two vehicles and the apartment of Bonnie Wonsidler. Wonsidler was the girl friend of Appellee Tucker and lived in an apartment near the parking lot where the vehicles were located. Upon searching the cars and the apartment, the police found the allegedly stolen meat and the sack in which it was carried from the restaurant.

Appellees' pretrial motion to suppress the evidence seized from the vehicles and the apartment was denied. At appellees' trial, the witness who observed the vehicles leaving the restaurant parking lot testified that one car was a blue Falcon. N.T. 100. At no time, did he state that the car was or even might have been a powder blue Buick. Testimony indicated that when Detective Daniels came upon the cars and saw a blue Buick instead of a blue Falcon he radioed to an officer at the scene of the burglary to ask whether the vehicle used could have been a Buick rather than a Falcon. The other officer replied that it could have been, so Detective Daniels, in his application for the search warrant, described the car to be searched as a Buick rather than a Falcon. N.T. 168–169.

At the conclusion of the Commonwealth's case, appellees moved that the court reopen the suppression motion, and

argued that evidence gained through the use of the search warrant was tainted because of the misstatement as to the make of the Buick. The court sustained appellees' motion, ordered suppressed all the evidence seized pursuant to the warrant, and declared a mistrial.[2] We reverse.

In order to secure a valid search warrant, an affiant must provide a magistrate with information sufficient to persuade a reasonable person that there is probable cause for a search. The information must give the magistrate the opportunity to know and weigh the facts and to determine objectively whether there is a need to invade a person's privacy to enforce the law. *Commonwealth v. D'Angelo*, 437 Pa. 331, 336–37, 263 A.2d 441, 444 (1970), and cases therein cited. In *D'Angelo*, the court held invalid a search warrant based upon the affiant's misstatement of a fact. Later cases have held, however, that misstatements of fact will invalidate a search warrant and require suppression of the fruits of the search only if the misstatements of fact are *deliberate* and *material*. *Commonwealth v. Scavincky*, 240 Pa.Super. 550, 556, 359 A.2d 449, 452 (1976); *Commonwealth v. Jones*, 229 Pa.Super. 224, 230, 323 A.2d 879, 881 (1974), *allocatur denied,* 229 Pa.Super. xxxv. A material fact is one without which probable cause to search would not exist. *Commonwealth v. Scavincky*, 240 Pa.Super. at 556, 359 A.2d at 452; *Commonwealth v. Jones*, 229 Pa.Super. at 230, 323 A.2d at 881. The inclusion of false evidence will not invalidate a search warrant if the warrant is based upon other information which is valid and sufficient to constitute probable cause. *Commonwealth v. Gullett,* 459 Pa. 431, 329 A.2d 513 (1974); *Commonwealth v. Scavincky,* 240 Pa.Super. 550, 359 A.2d 449.

**2.** Subsequent to the Commonwealth's filing this appeal, Judge RUFE wrote an opinion in which he stated that he erred in suppressing all the evidence seized pursuant to the warrant. He stated that only the search of the Buick was improper and that the evidence taken from the Plymouth and the apartment was seized lawfully. Only the original suppression order and not Judge RUFE's written opinion is before us in this case and it is the order, itself, which we reverse. We note, however, that with the exception of the evidence seized from the Buick, we reach the same result as that stated by Judge RUFE in his opinion.

 In the present case, Detective Daniels' statement concerning the powder blue Buick was deliberately false and misleading. This Court does not approve of such conduct by the police. Nevertheless, when we excise the misleading statement from the affidavit we still find a sufficient basis for probable cause and a valid search warrant. Two cars, one blue, the other with large tail fins and a dent and primer paint on the driver's side, were observed leaving the scene of the burglary. Two cars similar in appearance to these were found a short time later in an apartment area parking lot. In plain view inside the car with the tail fins, the police found ski masks similar to those worn by the alleged burglars. Shortly thereafter two white males dressed in the same clothing the burglars had been described as wearing appeared from near the apartments. One of them entered the blue car. This evidence was more than sufficient to allow the magistrate to conclude, despite the misstatement as to the make of one car, that there was probable cause to search the blue Buick. Accordingly, we reverse the order suppressing the evidence found in the Buick.

 If the misstatement is not a sufficient basis for invalidating the search of the Buick, it likewise has no effect on the search of the Plymouth or of Ms. Wonsidler's apartment. The facts as stated in the preceding paragraph establish sufficient probable cause to enable a magistrate to issue a search warrant for the Plymouth. Therefore, we also reverse that part of the court's order suppressing the evidence found in the Plymouth.

 Finally, the record indicates adequate probable cause to justify a search of the apartment. Appellees argue that the warrant was defective because the affiant, Detective Daniels, failed to provide the magistrate with the underlying circumstances upon which he relied in concluding that criminal activity had occurred and that the stolen meat was in the Wonsidler apartment. *See Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723

(1964). Initially, we note that when the information given to the magistrate by the affiant is within affiant's own personal knowledge, as it was here, rather than obtained from an informant, the *Aguilar* test is inapplicable. *See Commonwealth v. Milliken,* 450 Pa. 310, 313, 300 A.2d 78, 80 (1973). Secondly, in determining whether an affidavit is sufficient to support a search warrant we must apply

> the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, . . .; that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, . . .; that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, . .; and that their determination of probable cause should be paid great deference by reviewing courts, . . .. [Citations omitted.]

*Spinelli v. United States,* 393 U.S. at 419, 89 S.Ct. at 590, 21 L.Ed.2d at 645.

As we have already noted, two vehicles and two suspects closely matching the descriptions of those involved in the burglary were discovered in a parking lot outside the apartment of Bonnie Wonsidler. Detective Daniels had personal knowledge that Appellee Tucker was a frequent visitor of Wonsidler and, at times, an occupant of the apartment. When spotted by the police, the appellees were walking toward the parking lot from the vicinity of the apartment.

While it is obvious that there existed other places where the [meat] *might* have been secreted, it is also true that "[t]he standard applied by the magistrate is not that of certainty that the objects sought will be found as a result of the search." [Citation omitted.]

*Commonwealth v. Frye,* 242 Pa.Super. 144, 148, 363 A.2d 1201, 1204 (1976).

■ The information provided to the magistrate by Detective Daniels was sufficient to persuade a reasonable person that probable cause to search for evidence existed.

Accordingly, we reverse the trial court's suppression of the evidence seized from the apartment.

The suppression order of the court below is reversed and the case remanded for trial.

SPAETH, J., concurs in the result.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.