409 A.2d 898

**COMMONWEALTH of Pennsylvania**

v.

**Scott STEELE, Appellant.**

Superior Court of Pennsylvania.

Argued July 17, 1979.

Filed Sept. 7, 1979.

Reargument Denied Dec. 13, 1979.

Petition for Allowance of Appeal Denied Jan. 14, 1980.

Marc R. Gordon, Philadelphia, for appellant.

Lee M. Kaplan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before MONTGOMERY, O'BRIEN and HONEYMAN, JJ.*

HONEYMAN, Judge:

Scott T. Steele appealed from judgment of sentence following his conviction of murder in the first degree by verdict of a jury. Following refusal of post trial motions, a sentence of life imprisonment was imposed upon him. He relies upon four bases for his appeal. The one concerning alleged error of the trial judge in instructing the jury concerning his flight has no foundation in the record. We will address ourselves to the remaining three.

On September 15, 1976, between 11:00 a. m. and noon, George J. Miller was found in his living room, dead from multiple stab wounds. The police came, recovered a blood stained kitchen knife from the coffee table, took samples of blood from the house, as well as from a trail of blood leading to the street. The house blood was type O (the decedent's

---

* Justice HENRY X. O'BRIEN of the Supreme Court of Pennsylvania and Judge ROBERT W. HONEYMAN of the Court of Common Pleas of Montgomery County, Pennsylvania, are sitting by designation.

type) and the trail blood was type A (the appellant's type). From their investigation, the police learned the following additional facts:

1. Appellant claimed Miller had "ripped him off" in a drug sale shortly before death;

2. The two men frequently had argued, but were otherwise generally friendly;

3. Appellant had been at Miller's home at 2:30 a. m. the day of the killing;

4. Appellant had been a daily visitor to Miller's home;

5. Miller's neighbor, at about 9:00 a. m., heard screaming and hollering from the Miller home followed by a house door closing and a car speeding away;

6. Miller's house was regularly kept locked up, including the day of the killing, and there was no evidence of forced entry.

Appellant's whereabouts were unknown until October 2, 1976, on which date he was transported to Police Headquarters at 8:50 p. m. At 9:30 p. m. he waived his *Miranda* rights and was questioned. Police learned the following additional facts therefrom:

1. Appellant had not attended Miller's funeral;

2. Appellant denied knowledge of Miller's death;

3. Appellant was the last one known to have seen Miller alive, about which visit he was unresponsive;

4. His left hand bore a scar from a large laceration. At the time, appellant was a robust 31 year old man with a high school education. The interrogation was interrupted at 11:55 p. m. after the appellant continued denial of his complicity. Throughout this initial period of interrogation his answers were generally evasive. A different police detective resumed questioning him at 12:30 a. m. on October 3, 1976 and this continued on until 3:00 a. m., during all of which time appellant persisted in his lack of any knowledge in the matter. At 4:00 a. m. the questioning resumed until 5:00 a. m., in which interval he admitted he had stabbed Miller. This statement was reduced to writing.

At 10:00 a. m. on October 3, 1976, two search warrants were obtained. One was for the purpose of extracting blood from the body of the appellant, and the other was for the search of his automobile. Both warrants were executed. It was ascertained that he had blood type A. Inside his automobile were found numerous blood stains, a knife, blood stained clothing and Chicago hotel receipts and Chicago newspapers dated September 26–28, 1976. At 5:15 p. m. October 3rd, appellant gave police a further inculpatory statement, but then declined to sign it. He was arraigned on early morning of October 4th.

■ Appellant first complains that it was error to refuse to suppress his statements because they were involuntary and resulted from unnecessary delay in his arraignment. The "six hour rule" of *Com. v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977) does not apply to this case. It is governed by the principles enunciated in *Com. v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972) and its progeny. The suppression hearing judge found that the arrest occurred at 11:55 p. m., October 2nd, thus making the time interval from arrest to commencement of the inculpatory statements 4 hours and 5 minutes. On the other hand, appellant's position is that his arrest occurred when taken to police headquarters at 8:50 p. m., thus making the length of the time interval until the inculpatory statements 7 hours and 10 minutes. There is nothing in the record indicating any abusive conduct by the police toward the appellant, and no trickery, artifice, nor denial of his basic comforts were established. The two police officers testified that the appellant volunteered to come into police headquarters, and the appellant acknowledged, in his testimony, that the police ". . . kept telling me I wasn't under arrest . . .". We see no reason or basis to overturn the finding as to the time of arrest by the suppression judge. Further, we see no nexus between the clearly unnecessary delay in arraignment and the first inculpatory statement, within the parameters of *Futch, Com. v. Williams*, 455 Pa. 569, 319 A.2d 419 (1974) and a number of pre-*Davenport* cases wherein time intervals

up to 5 hours have been found acceptable. The second statement was merely an extension or amplification of the first statement, and, as the suppression judge found, was initiated by the appellant, and not at the urging of the police. This followed immediately after appellant had been afforded a visit with his wife and sister-in-law. We see no reason to treat the second statement in a different light than its forerunner.

Next, appellant submits that the physical evidence seized from his automobile should have been suppressed because probable cause was lacking for the issuance of the search warrant. A review of the contents of the affidavit submitted to the issuing authority, which was the basis for the issuance of the search warrant, shows that it contained virtually all of the above enumerated facts developed by the police. Such combination of facts would lead a reasonable mind to conclude there was probable cause to search the appellant's automobile. The suppression judge so concluded, and we see no reason to conclude differently. Appellant further relies upon the two alleged misstatements in the affidavit. One was that the affidavit said that a Willie Hill stated he left Miller's home with the appellant, rather than before the appellant, and the other was that the neighbor heard the screaming and hollering next door between 8:00 and 9:00 a. m. rather than precisely at 9:00 a. m. Misstatements in an affidavit must be deliberate and material in order to vitiate the search warrant issued in reliance thereon. The test is not whether the misstatement strengthens the application but whether it is essential to it. See *Com. v. Tucker*, 252 Pa.Super. 594, 384 A.2d 938 (1978). We find no valid basis to overturn the findings and conclusions of the suppression judge, nor to reverse the order refusing to suppress the physical evidence.

The final point raised by appellant is that it was error to admit his statements because they resulted from an arrest that was not based on probable cause. The totality of the aforementioned enumerated facts that were known to the police at 11:55 p. m. on October 2, 1976 was sufficient to

warrant a police officer of reasonable caution to believe that appellant had committed the murder. See *Com. v. Dickerson*, 468 Pa. 599, 364 A.2d 677 (1976) and *Com. v. Jones*, 457 Pa. 423, 322 A.2d 119 (1974).

Judgment of sentence affirmed.