J-S26011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL AARON REED | |
| Appellant | No. 1044 MDA 2014 |

Appeal from the PCRA Order May 21, 2014
In the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0002248-2010

BEFORE:  OTT, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                        **FILED JUNE 23, 2015**

Michael Aaron Reed appeals, *pro se*, from the order entered May 21, 2014, in the Franklin County Court of Common Pleas, dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq*.  Reed seeks relief from the judgment of sentence of an aggregate nine to 18 years' imprisonment imposed following his conviction of two counts of robbery and one count of criminal conspiracy.[1]  On appeal, he argues both trial and PCRA counsel provided ineffective assistance.  For the reasons that follow, we affirm.

The facts underlying Reed's convictions are as follows.  On July 27, 2010, at approximately 9:13 p.m., two armed men entered the Blue Ridge

_____

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii), (a)(1)(v), and 903, respectively.

Food Mart in Blue Ridge Summit, Pennsylvania, and demanded the clerk give them all of the money in the cash register.[2] Both men were wearing masks, one had a gun and the other was armed with a knife. After robbing the store of an estimated $500 to $550 in cash, they fled in a car parked behind the store.[3] *See* N.T., 6/23/2011, at 45-49, 71. The robbery was captured on the store's video surveillance camera.

Two witnesses, who were outside of the food mart at the time of the robbery, saw the culprits flee in a two-door, two-tone maroon and grey car, which they believed had the same body type as a Dodge Shadow or Spirit. One witness, Joseph Trail, noticed the car had a Maryland license plate, although he could not identify the plate number. *See* N.T., 6/23/2011, at 85, 109.

At approximately 9:20 p.m., Jeffrey Croteau was traveling on Pen Mar Road near Camp Louise, just over the Maryland border, when he observed a car on the side of the road with its front end in a ditch. *Id.* at 136-137. Croteau stopped to see if the driver needed assistance and, as he

---

[2] The Blue Ridge Food Mart is located close to the Pennsylvania/Maryland border. As will be discussed *infra*, Reed was arrested after his car slid down an embankment on a road in Maryland. Officers from several surrounding jurisdictions assisted in the investigation of the robbery.

[3] The store clerk testified he believed the culprits took a "[c]ouple of hundred dollar[ bills], couple of fifty dollar[ bills] … four or five [twenties] … two or three [tens] … for or five [fives]" and possibly "30 to 50" one dollar bills. N.T., 6/23/2011, at 72-73.

approached, he noticed the driver and passenger putting on t-shirts as they exited the car. He explained the two men "seemed like they wanted to get the car back on the road and get moving as quickly as possible." *Id.* at 137. The passenger, later identified as Reed, asked Croteau if he could use his cell phone to call his mother. Croteau attempted to place the call for Reed, but the call would not go through. Croteau then left as another vehicle stopped to help. *See id.* at 137-138.

Shayla Murray and her boyfriend were driving by the accident scene around the same time when they stopped to help. Murray allowed Reed to use her cell phone, and he placed two calls to his mother at 9:27 p.m. Murray and her boyfriend were still at the scene when the police arrived. *See* N.T., 6/24/2011, at 4-6, 11.

Officer Bryan Chappell, Jr., of the Waynesboro Police Department, responded to a radio call from the Washington Township Police to assist in investigating an armed robbery. Officer Chappell proceeded to the food mart and began driving around the nearby area to search for the suspects. At approximately 9:37 p.m., he came upon an older model Dodge or Plymouth that had slid off the embankment on Pen Mar Road, approximately two miles from the robbery scene. The car was two-tone, maroon on top and silver on the bottom, with a Maryland license plate, and matched the

description of the vehicle used in the robbery.[4] Officer Chappell secured the four individuals at the scene - Reed, his co-defendant Russell Runk, as well as, Murray, and her boyfriend Cameron Himes - until backup arrived. **See** N.T., 6/23/2011, at 155-160.

Corporal Lloyd Perkins, of the Washington Township Police Department, also responded to the armed robbery call, arriving at the food mart at approximately 9:20 p.m. Corporal Perkins was interviewing witnesses at the scene when he received a radio call from Officer Chappell, stating the officer believed he had located the suspect vehicle. Corporal Perkins proceeded immediately to the crash scene in Maryland, arriving at approximately 9:39 p.m. **See id.** at 176-180. Corporal Perkins stated he was "surprised because [the vehicle that had skidded off the road] was the **exact description** [he] got from the witnesses at the [robbery] scene of the vehicle." **Id.** at 180-181 (emphasis supplied).

The responding officers conducted a pat down search of Reed and Runk. Detective Timothy Atwell, of the Washington County Maryland Sheriff's Office, who was assisting at the crash scene, asked Runk if he could search his clothing. Runk agreed, and Detective Atwell recovered $487.00, which was kept "in a loose unorganized haphazard fashion" in his back

---

[4] We note, however, that unlike the description of the suspects' car provided by the witnesses, Reed's car had four doors.

pocket.[5]  N.T., 6/24/2011, at 19.  Thereafter, Runk and Reed were arrested. During a search incident to the arrest, the police recovered latex gloves from Reed.

Detective Atwell secured the vehicle involved in the crash and later obtained a search warrant for the vehicle.  From inside the vehicle, the police recovered, *inter alia*, a pair of black camouflage pants, a black sweatshirt, a brown t-shirt, two pairs of sports gloves, a small pellet clip to an air gun, and a registration card indicating the vehicle was registered to Reed.[6]  *See id.* at 32-34.  One pair of the gloves recovered matched the gloves on one of the suspects as seen in the surveillance video.  No weapons were ever recovered.

Reed and his co-defendant Runk were tried before a jury in June of 2011.  On June 24, 2011, the jury found both co-defendants guilty of two counts of robbery and one count of conspiracy.  On August 23, 2011, Reed was sentenced to 60 to 120 months' imprisonment for one count of robbery, and a consecutive 48 to 96 months' incarceration for the conspiracy conviction.  The court imposed a concurrent sentence of 18 to 36 months'

_____

[5] The bills recovered from Runk were "two one hundred dollar bills, four fifty dollar bills, one twenty dollar bill, twelve five dollar bills, [and] seven one dollar bills." *Id.* at 20.

[6] It appears, from the surveillance video, that one of the masked robbers wore jeans and a black and white long-sleeved shirt, while the other wore camouflage pants and a black hoodie sweatshirt.

imprisonment for the second robbery conviction. Reed did not file a direct appeal.[7]

On September 10, 2012, Reed filed a timely *pro se* PCRA petition, in which he raised, *inter alia*, a challenge to the sufficiency and weight of the evidence, and trial counsel's ineffectiveness for failing to: (1) object to evidence and impeach witnesses at trial; (2) conduct a more thorough pretrial investigation, including an investigation of a similar robbery that occurred two weeks after the one in question; and (3) file a direct appeal.[8] Brian O. Williams, Esq. was appointed as counsel to assist Reed in litigating his PCRA petition. After being granted two extensions of time to file an amended petition, Williams filed a petition to withdraw as counsel and accompanying ***Turner***/***Finley***[9] "no merit" letter on August 2, 2013. However, on August 20, 2013, the PCRA court entered an order directing Williams to address Reed's claim that trial counsel failed to file a requested

---

[7] Runk's judgment of sentence was affirmed by a panel of this Court. ***See Commonwealth v. Runk***, ___ A.3d ___, No. 1621 MDA 2014 (Pa. Super. May 28, 2015) (unpublished memorandum).

[8] The other issues Reed raised in his *pro se* PCRA petition have been abandoned on appeal. Specifically, he argued (1) the initiation of his criminal case by the filing of an information, rather than by a grand jury indictment, was unconstitutional; (2) the Legislature had no authority to enact the Pennsylvania Crimes Code; and (3) the restitution order in his sentence was erroneous. ***See*** Motion for Post Conviction Relief, 9/10/2012.

[9] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

direct appeal. Thereafter, on September 9, 2013, Williams filed an amended "no merit" letter, contending, once again, that Reed's PCRA claims were meritless, and concluding, specifically, that Reed never asked trial counsel to file a direct appeal. *See* Amended No Merit Letter, 9/9/2013, at unnumbered p. 4.

On October 15, 2013, the PCRA court entered an opinion and order granting counsel's petition to withdraw, and dismissing Reed's PCRA petition without a hearing. However, the court entered an amended order eight days later, to comply with the requirements of Pa.R.Crim.P. 907, and provide Reed with the opportunity to respond to the court's proposed dismissal of his petition. Reed originally filed a *pro se* response to the court's first order on October 30, 2013, in which he reiterated his prior claims of trial counsel's ineffectiveness, as well as asserted PCRA counsel's ineffectiveness for failing to raise additional claims. Specifically, Reed claimed he asked PCRA counsel to challenge trial counsel's ineffectiveness for failing to file a suppression motion, contesting the legality of the police's arrest and subsequent search of his person. After the PCRA court entered its amended order, Reed filed a second *pro se* response, in which he incorporated by reference his prior filing. Thereafter, on December 20, 2013, the trial court entered an order, acknowledging that prior PCRA counsel's "no merit" letter "improperly addressed the issue of trial counsel's failure to file a direct appeal." Order, 12/20/2013. Accordingly, the court appointed Kristin Nicklas, Esq., to represent Reed at a February 13, 2014, hearing on the issue. *See id.*

The hearing was continued until April 28, 2014, and, following the hearing, on May 22, 2014, the PCRA court entered an order and opinion dismissing Reed's PCRA petition.[10]   Reed filed a *pro se* motion for reconsideration, which the PCRA court declined to consider since Reed was, at that time, represented by counsel.  On June 13, 2014, PCRA counsel filed a motion to amend the PCRA petition and requested a hearing, stating that she had obtained new evidence to support Reed's claim that he asked counsel to file a direct appeal.  **See** Motion to Amend PCRA and Schedule Hearing, 6/12/2014.  Nonetheless, the PCRA court denied counsel's motion, and this timely appeal followed.

On June 30, 2014, the PCRA court directed Reed to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On July 14, 2014, however, PCRA counsel filed a motion to withdraw and requested a **Grazier**[11] hearing because Reed had informed her he wanted to proceed *pro se*.  At the conclusion of a **Grazier** hearing on August 15, 2014, the PCRA court determined Reed "made a knowing, intelligent, and voluntary waiver of his right to counsel" and granted him permission to proceed *pro se*.  Order, 8/15/2014.  **See also** N.T., 8/15/2014.  Accordingly, on August

---

[10] The only issue addressed the April 28, 2014, hearing was whether trial counsel was ineffective for failing to file a direct appeal.

[11] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

18, 2014, Reed filed a *pro se* concise statement in response to the PCRA court's June 30, 2014, order.

On appeal, Reed raises the following four layered ineffectiveness claims. He asserts PCRA counsel was ineffective for failing to raise or properly argue the ineffectiveness of trial counsel for (1) failing to file a pretrial suppression motion; (2) failing to impeach witnesses, prepare for trial, and object to evidence; (3) failing to investigate and present evidence of third party culpability; and (4) failing to object to the admission of Commonwealth's Exhibit #4.

When reviewing an order dismissing a PCRA petition, we must determine whether the PCRA court's findings of fact are supported by the record, and whether its legal conclusions are free from error. *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014). "Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record." *Commonwealth v. Carter*, 21 A.3d 680, 682 (Pa. Super. 2011) (citation omitted).

Where, as here, the only claims raised on appeal challenge the effectiveness of counsel, our review is well-settled:

> We begin our analysis of ineffectiveness claims with the presumption that counsel is effective. To prevail on his ineffectiveness claims, Appellant must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) Appellant suffered prejudice because of counsel's action or inaction. With

- 9 -

regard to the second, *i.e.*, the "reasonable basis" prong, we will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." To establish the third, *i.e.*, the prejudice prong, Appellant must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction.

*Commonwealth v. Spotz*, 18 A.3d 244, 259-260 (Pa. 2011) (internal citations omitted). "Failure to establish any prong of the test will defeat an ineffectiveness claim." *Commonwealth v. Keaton*, 45 A.3d 1050, 1061 (Pa. 2012) (citations omitted).

Moreover,

[w]here the defendant asserts a layered ineffectiveness claim he must properly argue each prong of the three-prong ineffectiveness test for each separate attorney.

Layered claims of ineffectiveness "are not wholly distinct from the underlying claims[,]" because "proof of the underlying claim is an essential element of the derivative ineffectiveness claim[.]" "In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue."

*Commonwealth v. Rykard*, 55 A.3d 1177, 1190 (Pa. Super. 2012) (internal citations omitted), *appeal denied*, 64 A.3d 631 (Pa. 2013).

Reed first challenges PCRA counsel's ineffectiveness for failing to assert trial counsel's ineffectiveness for failing to file a pretrial suppression motion. He also contends the PCRA court erred in failing to direct PCRA counsel to address this claim. Specifically, Reed contends trial counsel

should have challenged the legality of his vehicle stop and arrest, as well as the searches of his person, his co-defendant, and his vehicle. In support of these claims, Reed asserts (1) his vehicle did not match the description of the suspect vehicle; (2) once he was detained, the officers took no action to confirm or dispel their suspicion that he was involved in the robbery for more than 45 minutes; (3) he was not arrested for another two and one-half hours; (4) the "pat down" of Runk exceeded a valid *Terry*[12] stop; (5) Runk's consent to search was not voluntarily given; and (7) the probable cause affidavit supporting the search warrant for his vehicle contained false information "contrived" by two of the investigating officers. *See* Reed's Brief at 11-26.

Preliminarily, we note "a petitioner can preserve [a challenge to PCRA counsel's representation] by including that claim in his Rule 907 response or raising the issue while the PCRA court retains jurisdiction." *Commonwealth v. Rigg*, 84 A.3d 1080, 1085 (Pa. Super. 2014). Here, Reed properly preserved this issue by including it in his October 30, 2013, response to the PCRA court's Rule 907 notice. *See* Reed's Objections to Opinion and Order of Court, 10/30/2013, at 11-13.

The PCRA court addressed this claim, summarily, as follows:

---

[12] *Terry v. Ohio*, 392 U.S. 1 (1968).

> [W]e conclude that it was reasonable for counsel to forgo a suppression motion on this issue, and even if the issue had been raised, the outcome of this case would not likely have been different. Despite allegations of an unlawful arrest and search of the Defendants, the evidence presented at trial by various officers was consistent with a valid stop, search, and eventual arrest.

PCRA Court Opinion, 9/19/2014, at 8. We agree.

First, we emphasize that, contrary to Reed's characterization, this case did not involve a traditional vehicle stop, since Reed's car was stuck in an embankment when Officer Chappell drove by the scene. The officer stopped to investigate because the car matched the description of the one involved in the robbery, and had crashed not far from the robbery site. Under these circumstances, Officer Chappell had reasonable suspicion to detain Reed and Runk so that he could determine whether they were involved in the robbery. Moreover, because the officer was informed the suspects were armed, he had sufficient justification to perform a pat-down for weapons. *See Commonwealth v. Guess*, 53 A.3d 895, 901 (Pa. Super. 2012) ("In order to justify a pat-down search, or *Terry* stop, the officer must have reasonable suspicion, under the totality of the circumstances, that criminal activity is afoot and that 'the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others.'") (footnote omitted), *appeal denied*, 67 A.3d 794 (Pa. 2013).

Thereafter, Runk gave Detective Atwell consent to search his person, and the detective recovered a large amount of cash similar to that taken during the robbery. Reed cannot challenge the voluntariness of Runk's

consent because he had no "expectation of privacy in the situs from which the contraband was seized," that is, Runk's back pocket. **Commonwealth v. Hawkins**, 718 A.2d 265, 268 (Pa. 1998). Furthermore, with regard to Reed's complaints regarding the time it took investigators to formally place him under arrest, we find he has failed to assert how he was prejudiced. We remind Reed that this case involved an armed robbery in a small town, and the suspects fleeing over the state line into another jurisdiction. Assuming, *arguendo*, Reed's account is accurate, a two and one-half hour delay is not unreasonable under the circumstances presented herein.

Lastly, Reed's challenge to the search warrant executed on his vehicle is also unavailing. Although he claims the warrant contained incorrect information, namely that witnesses "described the robbery perpetrators as wearing camo pants" when none of the witnesses provided such a description,[13] we note that a review of the surveillance videotape from the mini-market clearly shows one of the suspects wearing camouflage pants. Further, although it is unclear if the officers actually viewed the surveillance videotape before applying for the search warrant, we note that "misstatements of fact will invalidate a search warrant and require suppression of the fruits of the search **only** if the misstatements of fact are **deliberate and material**." **Commonwealth v. Tucker**, 384 A.2d 938,

---

[13] Reed's Brief at 24.

941 (Pa. Super. 1978) (emphasis supplied).  Moreover, "[t]he inclusion of false evidence will not invalidate a search warrant if the warrant is based upon other information which is valid and sufficient to constitute probable cause."  *Id.*  Here, there was sufficient probable cause to justify the search of Reed's vehicle even if the information regarding the camouflage pants was not included.  *See* Application/Affidavit for a Search and Seizure Warrant, 7/28/2010 at 2-3 (averring (1) vehicle matched the description of car in which robbery suspects fled; (2) witnesses had stated suspects were armed; (3) large amount of cash, consistent with what was taken during the robbery, was recovered from co-defendant's back pants pocket; and (4) disabled vehicle was within two miles of robbery scene, and in an area consistent with direct of travel of suspect vehicle as recounted by witnesses).  Therefore, we agree with the conclusion of the PCRA court that trial counsel had a reasonable basis for not filing a meritless suppression motion.  Accordingly, no relief is warranted on this claim.

Reed's next layered ineffectiveness claim challenges trial counsel's ineffectiveness in failing to adequately prepare for trial.[14]  He also asserts PCRA counsel neglected to examine the record, independently, and only reviewed those specific ineffectiveness claims Reed raised in his *pro se*

_____

[14] Under this rubric, Reed claims that he "has discovered well over 100 examples of trial counsel's ineffectiveness both pretrial and at trial[.]" Reed's Brief at 31 (emphasis in original).

petition. Additionally, Reed argues PCRA counsel misaddressed the claims he did review.

Preliminarily, we note that many of these trial counsel ineffectiveness claims were not included in either Reed's *pro se* petition, or his response to the PCRA court's Rule 907 notice. Therefore, those issues, are waived for our review.[15] *See Rigg*, *supra*.

The remainder of Reed's claims challenge trial counsel's failure to "closely examine the material 'evidence' presented by the Commonwealth and thereafter carefully articulate the differences between such 'evidence' and items connected with the crime for the jury's understanding[.]" Reed's Brief at 36. Essentially, Reed asserts the Commonwealth attempted to "'bamboozle' and confuse the jury" with evidence that was irrelevant to the robbery. *Id.* In particular, Reed claims the amount of money recovered from Runk did not match the amount reported stolen, the color of Reed's car was different from that described by the witnesses, and the clothing recovered from his car did not match the items worn by the perpetrators.

_____

[15] The waived issues include Reed's contentions that trial counsel failed to: (1) present evidence that Reed's vehicle could not have been involved in the robbery based on the time frame of the events and distance from the crime scene; (2) object to the Commonwealth's closing argument; (3) obtain a daily report of the lottery sales for that day to determine that exact amount of money stolen; and (4) object to Washington Township Police Sergeant Vernon Ashway's testimony that he conducted internet research of air guns. *See* Reed's Brief at 31-34, 35-36, 42-43, 51-52.

These claims, however, were raised in Reed's *pro se* petition, and addressed by the PCRA court in its October 15, 2013, opinion. ***See*** PCRA Court Opinion, 10/15/2013, at 6-8 (finding (1) trial counsel "thoroughly cross-examined the victim about the amount of money taken and the inconsistencies between his trial testimony and the preliminary hearing testimony[;]" (2) although counsel did not directly cross-examine the witness regarding their description of car color as maroon, when Reed's car was, in fact, bright red, the PCRA court determined it was "entirely reasonable" for the car to "appear darker at night" and counsel did not need to impeach witnesses "to distinguish between two allegedly different shades of red[;]" and (3) both trial counsel and co-defendant's counsel objected to several items of clothing recovered from Reed's car). Because we find the PCRA court sufficiently addressed and properly disposed of these issues in its prior opinion, we rest on its well-reasoned basis. Accordingly, no relief is warranted.

Reed also presents a layered ineffectiveness claim focused on trial counsel's purported failure to "investigate and present evidence of third party culpability." Reed's Brief at 52. Specifically, Reed claims:

> he had discovered pretrial that another robbery in the same general vicinity and within a matter of a couple of weeks had occurred after the robbery at bar; that [the robbery] had been committed by two teenaged males, who were armed and wearing masks; and who fled the scene in a red car.

***Id.*** He asserts he advised trial counsel of "this other incident, but counsel did nothing to make further inquiry into it[.]" ***Id.***

- 16 -

Reed, however, has failed to provide any explanation in his petition or his appellate brief to support his claim that this "other incident" actually occurred, or how he learned about this other crime, nor has he provided sufficient details for this Court to determine whether the culprits could have committed the robbery in question. Accordingly, because Reed cannot demonstrate he was prejudiced by counsel's failure to present evidence of this "other incident" to the jury, assuming such evidence did, in fact, exist, we conclude he is entitled to no relief.

Reed's final layered ineffectiveness claim asserts trial counsel's ineffectiveness for failing to object to the admission of Commonwealth's exhibit #4, which "contains ALL of the police reports composed in this case during investigations[.]" Reed's Brief at 54. Because this issue was not raised in either Reed's *pro se* PCRA petition, or his response to the PCRA court's Rule 907 notice, it is waived for our review. ***See Rigg***, ***supra***.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/23/2015