J-S28024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OLIVER EMILIO RIVERA | : | |
| | : | |
| Appellant | : | No. 1131 MDA 2018 |

Appeal from the PCRA Order Entered June 11, 2018
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0002592-2014

BEFORE: BOWES, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED AUGUST 27, 2019**

Oliver Rivera appeals from the Order of the Court of Common Pleas of Luzerne County that denied his petition filed under the Post-Collateral Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Rivera claims counsel was ineffective for failing to file a motion to suppress evidence seized pursuant to a search warrant. We affirm.

The following is taken from the affidavit of probable cause in support of the warrant. In February 2014, agents from the Pennsylvania Office of Attorney General ("OAG") conducted a sting operation in the parking lot of the Giant food store in Hazleton. The operation took place based on information from a confidential informant ("CI") who arranged to buy heroin from Rivera's codefendant, Rachel Rebarchick. At the appointed time and place, Rebarchick arrived with Rivera in a Honda Accord; the CI was waiting in the parking lot

_____

* Retired Senior Judge assigned to the Superior Court.

in another vehicle. Rebarchick got into the CI's vehicle, while Rivera got into a Pontiac Grand Am. Rebarchick then sold 499 packets of heroin to the CI, after which she got back into the Accord.

Subsequently, OAG agents stopped the vehicles carrying Rebarchick and Rivera. The agents found Rivera in possession of 200 packs of heroin, 18 grams of cocaine, and 3.5 grams of crack cocaine, and they took him into custody. Rebarchick waived her Miranda rights and told agents that Rivera had supplied the heroin she had sold to the CI. She said he told her to give the heroin to the CI, and to get the money from the CI to give to him. Rebarchick also said that Rivera had come to the parking lot from 541 North Locust Street in Hazleton.

That same day, OAG agents received additional information about Rivera from a "known but unnamed" confidential source ("CS"). Aff. of Probable Cause at 3, R.R. 38. The CS said that Rivera and others used the second-floor apartment at 541 North Locust Street in Hazleton as a "workhouse" to package heroin and cocaine. The CS stated that he/she observed numerous incriminating items on the day before the sting operation while in the apartment with Rivera: a black duffle bag "filled with dope," heroin, cocaine, a scale on the counter, and packaging materials for drugs. The CS also said that Rivera had a key to the apartment.

A magisterial district judge issued a warrant for 541 North Locust Street in Hazleton. When agents executed it, they recovered heroin, cocaine, a digital scale, and bail bond paperwork in the name of Oliver Rivera.

Rivera initially hired Mark Mack, Esquire to represent him. N.T., 5/30/18, at 2-3. However, the trial court allowed Mack to withdraw as counsel and Thomas Cometa, Esquire entered his appearance on behalf of Rivera. Rivera pled guilty in December 2015 to one count of possession with intent to deliver 310.75 grams of cocaine and one count of possession with intent to deliver 122.9 grams of heroin. However, Rivera moved to withdraw his guilty plea and the trial court granted the motion.

Rivera then switched counsel several times. He first filed a Motion to Proceed *Pro Se*, but the trial court did not rule on that motion, evidently because the day after he filed it, a new lawyer, Brian Corcoran, Esquire of the Luzerne County Public Defender's Office, entered his appearance on Rivera's behalf. However, the Public Defender's Office moved for conflict counsel, and the trial court granted the motion and appointed Mary Deady, Esquire. Although Deady moved to suppress the evidence seized pursuant to the warrant, the court dismissed the motion as untimely.

Eventually, Rivera again pled guilty to the same offenses as those to which he had previously pled guilty, and the court sentenced him to eight to 16 years of incarceration. Rivera did not file a post-sentence motion or an appeal. He did file a timely *pro se* PCRA petition, and subsequently, an amended *pro se* PCRA petition. Paul Walker, Esquire later entered his appearance on behalf of Rivera and filed an amended PCRA petition. The petition claimed, among other things, that all prior counsel were ineffective

for failing to move to suppress the evidence seized from the apartment because Rivera was allegedly not in Hazleton on the day in question.

At a hearing, Rivera narrowed his claims to argue only that his first lawyer, Mack, was ineffective for failing to a file a motion to suppress, contending that Mack had represented Rivera "during the period within which the motions had to be filed." N.T., 5/30/18, at 42. Rivera testified that he was in Baltimore on the day of the controlled buy, which made it impossible for him to be in Hazleton on that date, as was alleged in the affidavit of probable cause. *Id.* at 12-14, 24-25. He stated that he left his residence in Drums, Pennsylvania between approximately 7:30 a.m. and 8:30 a.m. on that day to travel to Baltimore. *Id.* at 15, 36. As support, Rivera presented a YouTube rap video that he claimed he appeared in and filmed in Baltimore on the day of the sting operation. *Id.* at 24. He testified that he told Mack of his alibi and the video and asked him to file a motion to suppress based on this information, but Mack had not done so despite his repeated requests. *Id.* at 5-7, 10, 15, 25-26. No other witnesses testified at the PCRA hearing on Rivera's behalf and Mack was not present at the PCRA hearing. *Id.* at 34.

The PCRA court denied Rivera's petition and Rivera filed the instant timely appeal raising three issues:

> I. Whether, the Lower Court erred in denying Appellant's Amended Petition For Post-Conviction for Collateral Relief when it found that probable cause existed for the issuance [of a] warrant thus obviating any merit to a suppression motion.

II. Whether, the Lower Court erred in finding that Appellant's attorneys made a strategic decision in not filing a Motion to Suppress.

III. Whether, [the] Lower Court erred in denying Appellant's Amended Post-Conviction Act Petition as Appellant was prejudiced by his counsels' failure to timely file a Motion [t]o Suppress.

Rivera's Brief, at 7.

We review an order denying relief under the PCRA to determine whether the record supports the PCRA court's findings and the decision is free of legal error. **Commonwealth v. Ragan**, 923 A.2d 1169, 1170 (Pa. 2007). We afford the court's factual findings deference if the record supports those findings. **Commonwealth v. Brown**, 48 A.3d 1275, 1277 (Pa.Super. 2012). The appellant has the burden of convincing this Court that the PCRA court erred and that relief is due. **Id.**

There is a presumption that counsel is effective. **Commonwealth v. Andrews**, 158 A.3d 1260, 1263 (Pa.Super. 2017). In order to prevail on a claim that counsel was ineffective, the petitioner must establish three things: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." **Commonwealth v. Fulton**, 830 A.2d 567, 572 (Pa. 2003). "A failure to satisfy any prong of the ineffectiveness test requires

rejection of the claim of ineffectiveness." ***Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009).

We will address Rivera's three claims together, as all of his claims assert that counsel was ineffective in failing to file a motion to suppress the evidence obtained during the search of the North Locust Street apartment. To the extent Rivera claims on appeal that counsel other than Mack was ineffective, he has waived any such argument by narrowing his claim to Mack at the PCRA hearing.

Specifically, Rivera argues that because he was in Baltimore, Maryland on the day in question, the search warrant was defective because it relied on the CS's false statements. Rivera maintains that in the absence of a motion to suppress, he never had the opportunity to demonstrate that the court issued the search warrant based, in part, on false averments. Therefore, he contends that he was denied the right to attack the averments in the affidavit of probable cause and thus, was unable to challenge the validity of the warrant.

Where a petitioner alleges that counsel ineffectively failed to file a suppression motion, "the inquiry is whether the failure to file the motion is itself objectively unreasonable, which requires a showing that the motion would be meritorious." ***Commonwealth v. Johnson***, 179 A.3d 1153, 1160 (Pa.Super. 2018). "Where the challenge is to a failure to move for suppression of evidence, the defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been

more favorable." **Commonwealth v. Melson**, 556 A.2d 836, 839 (Pa.Super. 1989).

Rivera's ineffectiveness claim fails because his challenge to the warrant lacks arguable merit. A search warrant must be supported by probable cause in order to be valid. **Commonwealth v. Johnson**, 42 A.3d 1017, 1031 (Pa. 2012). Probable cause exists where:

> the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted. In considering an affidavit of probable cause, the issuing magistrate must apply the "totality of the circumstances test" which requires her to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit ... including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. A court reviewing a search warrant determines only if a substantial basis existed for the magistrate to find probable cause.

**Id.** (citations and quotations omitted). Further, we accord deference to a magistrate's finding of probable cause, as probable cause is based on a finding of the probability of criminal activity, not a *prima facie* showing. **Commonwealth v. Arthur**, 62 A.3d 424, 432 (Pa.Super. 2013). Moreover, when determining whether the warrant was issued upon probable cause, we must limit our inquiry to the information contained within the four corners of the affidavit presented in support of probable cause. **Id.**

"While [this Court has] recognized that the veracity of facts establishing probable cause recited in an affidavit supporting a search warrant may be

challenged and examined, we have not suggested that every inaccuracy will justify an exclusion of evidence obtained as a result of the search." **Commonwealth v. Baker**, 24 A.3d 1006, 1017 (Pa.Super. 2011) (quoting **Commonwealth v. Monte**, 329 A.2d 836, 842 (Pa. 1974)) (citations omitted). "[M]isstatements of facts will invalidate a search warrant and require suppression of the fruits of the search *only if the misstatements of fact are deliberate and material.*" **Id.** (quoting **Commonwealth v. Tucker**, 384 A.2d 938, 941 (Pa.Super. 1978)) (emphasis in **Baker**). Indeed, "[t]he inclusion of false evidence will not invalidate a search warrant if the warrant is based upon other information which is valid and sufficient to constitute probable cause." **Tucker**, 384 A.2d at 941.

The information contained in the affidavit was sufficient to establish probable cause to issue the search warrant for the North Locust Street apartment. The affidavit of probable cause stated that the affiant and other agents had personally observed Rivera's involvement in the drug transaction, which took place only one day after the CS allegedly was with Rivera in the apartment and had observed a black duffle bag "filled with dope," heroin, cocaine, a scale, and packaging materials for drugs. In addition, the CS said Rivera had a key to the apartment. Rivera has supplied no evidence that the CS's statements were deliberate or material misstatements. **Baker**, 24 A.3d at 1017.

Rivera's claim that he was in Baltimore on the day that the CS alleged that he/she was with Rivera in the North Locust Street apartment does not

prove that the CS's statements were false. His testimony at the PCRA hearing was that he left his home in Drums between approximately 7:30 a.m. and 8:30 a.m. on the day in question to travel to Baltimore. This does not, in fact, contradict the CS's statements repeated in the search warrant. By Rivera's own account, Rivera was in Luzerne County on the day in question before he left between 7:30 a.m. and 8:30 a.m. to travel to Baltimore. It was thus entirely possible for Rivera to have been present at 541 North Locust Street during the seven-and-a-half hour window between 12:00 a.m. and 7:30 a.m. on the day in question. This was consistent with the CS's statements in the search warrant. As the PCRA court aptly stated:

> [Rivera] seems to believe that because he left his residence on Snow Valley Drive in Drums at 7:30 a.m. on February 16, 2014, he could not have been present at the 541 North Locust Street apartment at any time prior thereto and that this testimony somehow affects the validity of the search warrant. Based upon the record before the court, [Rivera's] presence at the apartment on February 16, 2014 does not negate the establishment of probable cause. [Rivera] did not contest the accuracy of the search warrant with the exception of his presence on the premises on February 16.

PCRA Court Opinion, filed June 15, 2018, at 5.

Accordingly, we conclude that the issuing authority in this case made "a practical, common-sense decision" based on the totality of the circumstances set forth in the affidavit that there was "a fair probability that contraband or evidence of a crime" would be found at 541 North Locust Street. **Johnson**, 42 A.3d at 1031. Because the issuance of the search warrant was supported by probable cause, Rivera's trial attorneys were not ineffective for failing to file a

motion to suppress that would not have been meritorious. "Trial counsel cannot be held to be ineffective for failing to take futile actions or to raise a meritless claim." *Commonwealth v. Howard*, 645 A.2d 1300, 1304 (Pa. 1994).

Rivera's challenge to the search warrant fails for an additional reason. As the PCRA court pointed out, Rivera did not establish a privacy interest in the North Locust Street apartment. In order to prevail on a motion to suppress evidence, "a defendant is required to separately demonstrate a personal privacy interest in the area searched or effects seized, and that such interest was actual, societally sanctioned as reasonable, and justifiable." *Commonwealth v. Hawkins*, 718 A.2d 265, 267 (Pa. 1998) (citations and quotations omitted). "Such a legitimate expectation of privacy is absent where an owner or possessor meaningfully abdicates his control, ownership or possessory interest." *Id.* There was no evidence that Rivera had a personal privacy interest in the North Locust Street apartment. Therefore, he could not prevail on a motion to suppress and counsel cannot be held to have been ineffective for failing to file a non-meritorious motion. Thus, Rivera is not entitled to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/27/2019