J-S52033-15 & J-S52034-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MICHELLE LYNN CORATTO | |
| Appellee | No. 275 WDA 2015 |

Appeal from the Order Entered on January 15, 2015
In the Court of Common Pleas of Beaver County
Criminal Division at No.: CP-04-CR-0000103-2014

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DAVID R. PUGH, JR. | |
| Appellee | No. 276 WDA 2015 |

Appeal from the Order Entered on January 15, 2015
In the Court of Common Pleas of Beaver County
Criminal Division at No.: CP-04-CR-0002175-2013

BEFORE:  SHOGAN, J., OLSON, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED OCTOBER 22, 2015**

In this consolidated case,[1] the Commonwealth appeals the January 15, 2015 order granting Michelle Coratto and David Pugh's (collectively, "Appellees") motions to suppress physical evidence. After careful review, we reverse.

On August 17, 2013, the occupant of a duplex located at 26 West Midland Avenue, in Beaver County, Pennsylvania called the police to report a strong odor of marijuana in his home, which he believed to be emanating from the other unit in the duplex (28 West Midland Avenue). Kathleen Kelly, an officer with the Midland Borough Police Department, responded to the occupant's call, entered the residence, and confirmed that the entire first floor "smelled of fresh marijuana." Notes of Testimony ("N.T."), 9/25/2014, at 6. Officer Kelly walked outside and saw Coratto leaving the 28 West Midland Avenue residence, which she shared with her boyfriend, Pugh. When Officer Kelly told Coratto that her neighbor had reported a strong odor of marijuana, Coratto admitted that she had "just smoked a joint like an hour ago." *Id.* at 7-8.

Captain Douglas Edgell of the Ohioville Borough Police Department subsequently arrived at the scene. He too could smell a strong odor of fresh marijuana coming from Coratto's residence. Officer Ronald Lutton of the

_____

[1] Because the above-captioned cases arose out of the same incident, and because the Commonwealth raises the same issue in each, we *sua sponte* consolidated these cases for unitary review.

Midland Borough Police Department also responded to the West Midland Avenue duplex, where he detected a strong odor of fresh marijuana radiating from Coratto's residence. Officer Lutton then applied for, and successfully obtained, a warrant to search 28 West Midland Avenue. The affidavit of probable cause attached to that search warrant provided as follows:

> On or about August 17, 2013, Officer Kate Kelly of the Midland Borough Police Department received a radio dispatch call from the Beaver County Emergency Services Center, that the residence of 26 West Midland Ave. reporting [*sic*] a heavy smell of marijuana coming from the residence of 28 West Midland Ave. Midland, PA 15059.
>
> Upon Officers [*sic*] Kelly's arrival, she was brought into the residence of 26 West Midland Ave. Officer Kelly smelled what she determined to be a smell of fresh marijuana. Officer Lutton of the Midland Borough Police Department and [Captain] Edgell of the Ohioville Borough Police Department also arrived on scene and smelled from the outside of the residence what they believed to be fresh marijuana. Upon interviewing the residents [*sic*] of 28 West Midland Avenue., (Amy Coratto) she admitted that there was marijuana in the residence, but would not give the police consent to search the residence. It should be noted that this department has received previous calls about the smell of marijuana coming from 28 West Midland Ave.
>
> Assistant Chief Mark Smilek of the Ohioville Borough Police Department and Trooper Pat Thomas of the Pennsylvania State Police arrived and could also smell what they believed to be fresh marijuana.

Affidavit of Probable Cause, 8/17/2013, at 1.[2]

---

[2] Officer Lutton testified that he made a typographical error when he referred to Michelle Coratto as "Amy Coratto" in the affidavit. N.T. at 41.

After obtaining the search warrant, a group of officers, assisted by a canine, entered into Appellees' residence. In the attic of the home, officers found a nylon duffel bag, which contained six large Ziploc freezer bags filled with marijuana. A second nylon duffel bag contained three handguns. The serial number on one of those firearms had been obliterated. The officers also found $609.00 and several pieces of equipment used for cultivating marijuana.

Officer Lutton arrested Coratto and Pugh and charged each of them with one count of possession of a controlled substance with intent to deliver, five counts of possession of drug paraphernalia, three counts of persons not to possess firearms, one count of possession of a firearm with an altered manufacturer's number, and one count of altering or obliterating marks of identification.[3]

On August 12, 2014, Coratto filed a motion to suppress the statement that she made to Officer Kelly on August 17, 2013—*i.e.*, her admission that she had "just smoked a joint like an hour ago." N.T. at 7-8. Coratto argued that her statement was obtained in violation of **Miranda v. Arizona**, 384 U.S. 436 (1966). On September 25, 2014, the suppression court held a hearing on Coratto's suppression motion. Officer Kelly, Captain Edgell, and Officer Lutton testified for the Commonwealth at that hearing. After the

---

[3]   35 P.S. §§ 780-113(a)(30), and 780-113(a)(32); 18 Pa.C.S. §§ 6105(a)(1), 6110.2, and 6117, respectively.

parties presented argument on Coratto's motion, the suppression court, *sua sponte*, raised the following issue:

> I know these [questions] weren't necessarily raised in the [suppression] motion, but they're plaguing in my mind. . . . All of the three officers testified to a tee today that [Coratto] admitted to **smoking marijuana** in the house one hour before [the police arrived]. The affidavit of probable cause says that [Coratto] admitted that there was . . . **marijuana in the residence.** There is a distinct difference between the allegations . . . that were brought up in the testimony and what was actually contained in the warrant, and if that is [the] case, do we have a ***Franks [v.] Delaware***[, 438 U.S. 154 (1978)] issue here?
>
> * * * *
>
> I'm interested in finding out [the Commonwealth's] position on the statement in the warrant, as opposed to what was actually said by [Coratto,] and what effect that has on the probable cause issue under the warrant. In other words, if that is a misstatement and [Coratto] said, 'I smoked marijuana in the house an hour ago,' but there's nothing further [to suggest] that there's still marijuana in the house, and you take [the misstatement] out of the equation, you're left with the odor in the house alone, and I'm interested in finding out the Commonwealth's position on [whether that constitutes sufficient probable cause].

N.T. at 54-56 (minor modifications for clarity; emphasis added).

Because Coratto's suppression motion did not include a challenge to the veracity of the allegations in the affidavit of probable cause, the suppression court granted Coratto leave to supplement her motion. On October 3, 2014, Coratto filed an amended motion to suppress, wherein she argued that Officer Lutton "knowingly and intentionally or with reckless disregard [for] the truth" included a false statement in his affidavit of

- 5 -

probable cause. *See* Coratto's Supplemental Motion to Suppress, 10/3/2014, at 4 (unnumbered). Coratto also maintained that, without Officer Lutton's misstatement, the affidavit's remaining content is insufficient to establish probable cause. *Id.* (citing *Franks*, 438 U.S. 154).

On October 3, 2014, Pugh also filed a motion to suppress the physical evidence obtained pursuant to the search warrant. Substantively, Pugh's motion was identical to Coratto's amended motion to suppress. On December 2, 2014, the suppression court held a joint hearing to address Appellees' suppression motions. On January 15, 2015, the suppression court granted Appellees' motions, and suppressed all of the physical evidence that police seized during the execution of the search warrant on August 17, 2013.

On February 13, 2015, the Commonwealth filed notices of appeal.[4] On February 17, 2015, the trial issued orders directing the Commonwealth to file concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth timely complied. On February 26, 2015, the suppression court filed a unitary Pa.R.A.P. 1925(a) opinion.

The Commonwealth raises one issue for our review:

> After finding a deliberate material misstatement in the affidavit of probable cause relating to an admission of marijuana inside

---

[4] Pursuant to Pennsylvania Rule of Appellate Procedure 311(d), the Commonwealth has certified that the suppression court's order will terminate or substantially handicap the prosecution of this case. Pa.R.A.P. 311(d).

the residence, did the suppression court err in its *Franks v. Delaware* analysis by finding that the odor of fresh marijuana emanating from the residence, as testified to by four different police officers, did not provide sufficient evidence to support probable cause for the issuance of the search warrant?

Brief for Commonwealth at 4 (275 WDA 2015 and 276 WDA 2015).

When a defendant files a motion to suppress evidence, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. *Commonwealth v. Powell*, 994 A.2d 1096, 1101 (Pa. Super. 2010) (citing Pa.R.Crim.P. 323(h)). When reviewing a suppression court's ruling, our responsibility is: (1) to determine whether the record supports the factual findings of the court; and (2) to evaluate the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Bull*, 555 A.2d 1341, 1343 (Pa. Super. 1989). Where, as here, the Commonwealth appeals the decision of the suppression court, we must consider only the evidence of the defendant and so much of the evidence for the prosecution, which when read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Hamlin*, 469 A.2d 137, 139 (Pa. 1983).

If the record supports the factual findings below, we are bound by them. *Commonwealth v. James*, 486 A.2d 376, 379 (Pa. 1985). However, we are not bound by the legal conclusions that the suppression court drew from those facts. *Commonwealth v. Lagana*, 537 A.2d 1351, 1353 (Pa. 1988). Thus, the suppression court's conclusions of law are subject to our plenary review. *Commonwealth v. Mistler*, 912 A.2d 1265,

1269 (Pa. 2006); *Commonwealth v. Morley*, 681 A.2d 1254, 1256 n.2 (Pa. 1996).

In *Franks v. Delaware*, 438 U.S. 154 (1978), the United States Supreme Court recognized that a criminal defendant has a right, under the Fourth and Fourteenth Amendments to the United States Constitution, to challenge the veracity of the factual averments within an affidavit of probable cause. The Court held that, whenever a defendant makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false material statement in the affidavit, the suppression court must hold a hearing on the issue.[5] *Id.* at 155-56. If the defendant makes such a showing, but the remaining content in the affidavit is still sufficient to establish probable cause, his claim fails. *Id.* at 171-72. If, on the other hand, the affidavit's remaining content would be insufficient to establish probable cause, the suppression court must hold a hearing in order to allow the defendant to demonstrate perjury or reckless disregard by a preponderance of the evidence. *Id.* at 156.

Consistent with *Franks*, this Court has held that "[m]isstatements of fact in a search warrant affidavit will invalidate a search and require

---

[5] In *Commonwealth v. Hall*, 302 A.2d 342 (Pa. 1973), the Pennsylvania Supreme Court held, as a matter of state law, that a defendant's right to challenge the veracity of the statements included in an affidavit of probable cause is not contingent upon a "substantial preliminary showing" of the potential falsity of those facts. *See Commonwealth v. Miller*, 518 A.2d 1187, 1194-95 (Pa. 1986).

suppression only if they are deliberate **and** material." ***Commonwealth v. Mickell***, 598 A.2d 1003, 1010 (Pa. Super. 1991) (emphasis added) (citing ***Commonwealth v. Bonasorte***, 486 A.2d 1361, 1369 (Pa. Super. 1984)); ***see also Commonwealth v. Zimmerman***, 422 A.2d 1119, 1124 (Pa. Super. 1980) ("[An] appellant must establish that the police (1) made a misstatement, which is both (2) deliberate and (3) material."). Thus, in evaluating Appellees' suppression motions, the court was presented with two threshold questions. First, did Officer Lutton deliberately include a false statement in his affidavit of probable cause? Second, was the misstatement essential to the magistrate's finding of probable cause (*i.e.*, was it material)? ***See Commonwealth v. Jones***, 323 A.2d 879, 881 (Pa. Super. 1974) ("A material fact is defined as 'one without which probable cause to search would not exist.'"); ***see also Commonwealth v. Yucknevage***, 390 A.2d 225, 227 (Pa. Super. 1978) (holding that a misstatement in an affidavit is material if it is essential to the search warrant application).

Before the suppression court, the Commonwealth maintained that the statement "[Coratto] admitted that there was marijuana in the residence" simply was a typographical error, and not a deliberate misrepresentation. ***See*** Affidavit of Probable Cause, 8/17/2013, at 1. Officer Lutton testified at the suppression hearing that he accidently omitted the word "smoked" when drafting the affidavit. According to Officer Lutton, the affidavit should have read, "[Coratto] admitted that there was marijuana **smoked** in the residence." The suppression court rejected this argument for two reasons.

First, the suppression court noted that Officer Lutton also included the misstatement in his incident report and in the Appellees' criminal complaints. Suppression Court Opinion ("S.C.O."), 2/26/2015, at 13. Second, the suppression court concluded that "if the word 'smoked' was inserted into the statement, it would make no sense because there is no reference as to when [t]he marijuana was allegedly smoked." *Id.* at 14.

Once the suppression court determined that Officer Lutton had included a false statement in his affidavit deliberately, or with reckless disregard for the truth, the court then had to determine whether that statement was material. It is at this juncture that the suppression court's analysis goes awry. Ignoring the false assertion that "[Coratto] admitted that there was marijuana in the residence," the affidavit contained three other pertinent allegations: (1) a neighbor had called 911 to report "a heavy smell of marijuana" coming from Appellees' residence; (2) Officer Kelly could smell fresh marijuana from inside the neighbor's home; and (3) four other police officers smelled what they too believed to be fresh marijuana outside of Appellees' residence. *See* Affidavit of Probable Cause, 8/17/2013, at 1.

Rather than discussing whether these additional assertions provided the issuing magistrate with a substantial basis for concluding that probable cause existed, the suppression court simply found them to be incredible.

> In this case, the probable cause determination must rise or fall based upon the statement that the officers could smell fresh marijuana emanating from the residence while outside. The only marijuana found in the four-story house was four pounds of marijuana contained in [Ziploc] baggies in a duffle bag in the

- 10 -

attic. The [c]ourt questions how marijuana in this state and under the evidence presented, could be smelled from outside. . . . Therefore, the [c]ourt does not find credible evidence to support probable cause.

S.C.O. at 16-17 (citations to notes of testimony omitted).

It was not within the province of the suppression court to make such a post-hoc credibility assessment.[6] *See Commonwealth v. Baker*, 615 A.2d 23, 25 (Pa. 1992) ("[T]he duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed."). The suppression court incorrectly believed that its duty was to render a *de novo* probable cause determination based upon the testimony presented at the suppression hearing. *Id.* at 17. In this regard, the court noted that the Commonwealth failed to present evidence "on whether the windows of the residence were open or closed, or whether the attic was a sealed attic or had windows or ventilation." *Id.* at 16. But, those facts are immaterial. The question for the suppression court was whether the affidavit, after excluding the false statement that "[Coratto] admitted that there was marijuana in the residence," provided the issuing magistrate with facts sufficient to conclude that probable cause existed. *See Mickell*, 598 A.2d at 1010. We are confident that it did.

This Court has explained:

_____

[6] Appellees did not contend, and the suppression court did not hold, that the statement in the affidavit of probable cause that four police officers could smell marijuana outside of Appellees' home was a deliberate misstatement.

- 11 -

"[P]robable cause does not involve certainties, but rather 'the factual and practical considerations of everyday life on which reasonable and prudent men act.'" *Commonwealth v. Wright*, 867 A.2d 1265, 1268 (Pa. Super. 2005) (quoting *Commonwealth v. Romero*, 673 A.2d 374, 376 (Pa. Super. 1996)). "It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause." *Commonwealth v. Monaghan*, 441 A.2d 1318 (Pa. Super. 1982) (citation omitted); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983) (holding that probable cause means "a fair probability that contraband or evidence of a crime will be found."); *Commonwealth v. Lindblom*, 854 A.2d 604, 607 (Pa. Super. 2004) (reciting that probable cause exists when criminality is one reasonable inference, not necessarily even the most likely inference). To this point on the *quanta* of evidence necessary to establish probable cause, the United States Supreme Court recently noted that "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citations omitted).

*Commonwealth v. Dommel*, 885 A.2d 998, 1002 (Pa. Super. 2005) (citations modified).

Here, five police officers and a neighbor detected a strong odor of marijuana coming from Appellees' residence. The officers all recognized the scent to be fresh, rather than burned, marijuana. These facts amply provided the issuing magistrate with a substantial basis to conclude that there was a fair probability that contraband would be found inside Appellees' residence.[7] Indeed, this Court has held that, where an officer is lawfully

---

[7] *See Johnson v. United States*, 333 U.S. 10, 13 (1948) ("If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to

*(Footnote Continued Next Page)*

present at a particular location, his or her detection of an odor of marijuana constitutes sufficient probable cause to obtain a search warrant. *See Commonwealth v. Johnson*, 68 A.3d 930, 936 (Pa. Super. 2013); *Commonwealth v. Waddell*, 61 A.3d 198, 215 (Pa. Super. 2012) ("Once the odor of marijuana was detected emanating from the residence, the threshold necessary to establish probable cause to obtain a search warrant was met[.]").[8]

Because the false statement of fact included in the affidavit of probable cause was not essential to the magistrate's probable cause determination, the trial court erred in granting Appellees' motions to suppress.

Order reversed. Case remanded. Jurisdiction relinquished.

---

*(Footnote Continued)* ——————————

justify issuance of a search warrant. Indeed it might very well be found to be evidence of most persuasive character.").

[8] The suppression court found *Waddell* to be distinguishable because it involved exigent circumstances. S.C.O. at 15. This is true. However, unlike in *Waddell*, the police obtained a search warrant in the case *sub judice*. Although the **warrantless** entry into a home requires probable cause and exigent circumstances, no exigency is required when the police obtain a valid search warrant. Thus, the holding in *Waddell* applies equally to the facts of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/22/2015